UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Micah Thaisz, | : | Case No.: 3:19-CV-1415(AVC) |
| Plaintiff, | : | |
| V. | : | Dated: 11/21/19 |
| Kennedy, | : | |
| Defendant. | | |

## VERIFIED AMENED COMPLAINT WITH JURY DEMAND
### INTRODUCTION

This is a civil rights complaint filed by Micah Thaisz. a ward of the state of Connecticut, pro se litigant, with no adequately supplied legal library nor versed in law of any kind for damages and injuctive relief including punitive damages under 42 U.S.C. § 1983 alleging freedom of speech violation in a protected activity, cruel and unusual punishment in violation through deliberate indiffernce to serious mendical needs consituting First, Eighth Amendment violations. Plaintiff is also alleging torts; verbal assault of Intentional Infliction of Emotional Distress with Evil Intent.

### Jurisdiction

1. The court has jursidiction over the plaintiff's claims of violation of federal constitutional rights under §1331 (1) and 1343.
2. the court has supplemental jurisdiction over the plaintiff's claims of state tort law under 28 U.S.C. §1367.

### Parties

3. The plaintiff, Micah Thaisz was incarcerated at Garner Correction Institution (GCI) during the events described herein complaint.
4. Defendant Kennedy was at all times relevant to the action a Correction Officer working at (GCI).

1

5. On or about 4-29-17 the plaintiff, at approximately 8:30a.m. went to receive medications at the B-Block medication window.

6. Corrections Officer,(C/O) Kennedy, was assigned duty in B-Block as chit number 106 and begain instigating symptomatic responses from the plaintiff's easily stimulated debilitating disability.

7. The instigations from C/O Kennedy came in the form of insults, of an intense degree, such as: mockery, faggot, tourettes retard, blinky, mimickery of the swears and other verbal outburst the plaintiff was known for having the symptoms of.

8. C/O Kennedy made such dehumanizing remarks as the plaintiff passed the officers desk between plaintiff's cell and the medication delivery window.

9. B- Block is the only handicap accessable Block in (GCI).

10. The plaintiff suffers from a born with spinal condition among other things and as such was wheel chair bound at the time these events occurred.

11. The rarity of the plaintiff's tourettes syndrome that the plaintiff has been diagnosed with since prepubesence is of 1% of those whom are unfortunately afflicted with such a delbilating disability.

12. The disability presents itself in the plaintiff by continued ungulations and vocalizations casuing the afflicted to suffer a high degree of intense motormovements of the extremities with a fast regularity in short period bursts, reaptedly.

13. The physical aspect of the disability exhibits itself in the pounding of chest by fists, and random ejaculations of extremities.

14.The vocal aspect of the disability manifest to a degree of derogitory terminknowledy, vulgar, racial, sexualized and creed

based terms in staccoto manner that include entire phrazes.

15. The Buearu of Rehabilitation Services declared the plaintiff to have a significant disability in the year 2006

16. When exacerbation of the disability occurrs the motormovements and vocalizations increase exponetially in the sypmtomatic responses from the syndrome..

17. The plaintiff's disability is one of involutary verbal and physical symtoms that he connot control.

18. The plaintiff's vocalizations and physical motormovements are extremely loud and the cause the ejaculations of extremities to contact objects around the plaintiff and himself, such as: slapping, punching, thrashing, pounding of chest, thoughout the plaintiff's body which include neck, legs, arms, mid-body, and chest.

19. Tours in B-Block occur every fifteen mintues.

20. B-Block is a mental health block.

21. The plaintiff was harrassed throughout the entire first shift of C/O Kennedy.

22. The plaintiff recalls the defendant C/O Kennedy telling him to, "kill yourself. Do you want a razor? I'll give you one."

23. The plaintiff recalls being called faggot among other things at least three times throughout the first shift.

24. The first degrogitory calling of the plaintiff faggot occurred as illistrated in paragraph 6,7,8,and 22.

25. The second degrogitory calling of the plaintiff faggot occurred at approximately 9:30a.m. in B-Block.

26. The third degrogitory calling of the plaintiff faggot occurred at approxiamtely 11a.m. during the afternoon count check duty of C/O Kennedy.

27. At afternoon count check C/O Kennedy said,"one tourettes faggot check," at the plaintiff door.

28. Upon every tour of Kennedy's in B-Block during first shift duty called the plaintiff some form or another in kind ,as defined as discrimination from a immutable trait, as illistrated in paragraph 6,7,8,22,25,26,27, and this paragraph.

29. (GCI) is a deginated facility designed for the care and custody of individuals with mental health issues of a varying degrees.

30. Employees are governed to act under color of state law, to wit, under color of statutes, ordinaces, charters, customs, and regulation to include Administrative Directives.

31. The plaintiff verbally reported the sexual nature and discriminatory nature of harrassment endured throughout the first shift of C/O Kennedy duty to his superior Lt. Curren such as the plaintiff illistrated inparagraphs 6,7,8,22,25,26,27, and 28.

32. Lt. Curren took some action but failed to right the wrong, or document; defendant Kennedy was able to retailiate against the plaintiff.

33. Adiministrative Directives non-adhered to such as: A.D.1.1 (Mission Statemnt); A.D.1.13 (Code of Ethics)§4(Ethics Conduct)(A)-3,6,7."Promtly report any corupt, illegal, unathorized, or unethical behavior."; A.D.2.17 (Employee Conduct)§5-2,16,18,and 23,"Promtly report to a supervisor any threat, harrassment, physical or verbal abuse, assault, act of intimidation.";including §5(B)1,5,11,12,14,15(a),(b),(c),17"emgaging in behavior which is sexually, emotionally, or physically abusive or harrassing toward....inmates."; A.D.6.12 (P.R.E.A)§3(M)"Sexuall harrassment",§6(B)"continuing duty to disclose.",12(A)"Inmate Repoting-1,and 5."§13(A)-3,and 5;also (B)-1,6;also 14(A)-2,3(B)-1,3, and finally§18"<u>POST ALLEGATION</u>

PROTECTION OF INMATES AND STAFF FROM RETALIATION. "No inmate....should be retaliated against for reporting inmate sexual abuse or harrasment." ....and shall act promptly to remedy any such retaliation."; A.D.6.6 (Incident Reporting)§5(a)(a)(b)-iv"Any incident.....staff-on-inmate....misconduct shall be reported to the Duty offcier as soon as practical." (See exhibit 1).

34. Lt. Curren did not engage a Incident report as outlined in paragraph 33., leaving the very real possiblity of retaliation to be carried out by C/O Kennedy.

35. In not engaging the incident report as procedure and directives mentioned in paragraph 33 Lt. Curren shown the defendant deliberate indiffernce in cruel and unusual punishment by purposefully avoiding knowledge, and not fulfilling federally regulated duties.

>   (See Farmer , 511 U.S. at 843 n.8; See Goebert V. Lee,
>   510 F.3d 1312, 1327-28 (11th Cir. 2007)(Jail captian
>   had a duty to "look into" pregnant prisoners complaint)

36. Lt. Curren had a duty to "A.D.6.12(P.R.E.A.)§12(A)-1"reporting to any staff memeber either verbally of in writing (verbal reports must be documented promptly)."

37. Lt. Curren made no such prompt documenting of the sexual harrasment the plaintiff complaind of from C/O Kennedy, as stated in paragraph 36.

38. Through the signature of Lt. Curren, as per A.D.6.12(P.R.E.A.)§11 in verification that employees understand the training they recieved, Lt. Curren Knew to document the occurance of sexual harrasment by C/O Kennedy

39. Due to Lt. Curren inaction and/or ommissions, C/O Kennedy on the following days duty in B-Block, minutes before bottom tiers recreation approached the plaintiff's cell door and said,"

you tried to teach me a lesson. I'm the one who teaches lessons around here. I'll make a deal with you. If you don't say anything I won't say anything." On 4-30-17.

40. Plaintiff denied C/O Kennedy's deal.

41. C/O Kennedy immediately retaliated against the plaintiff by locking him inside during his tiers recreation.

42. The retalitory action deprived the plaintiff of his recreation period, as A.D.2.17§5(B)15.

43. C/O Kennedy engaged in strictly forbidden behavior by attempting to make a deal with the plaintiff, as A.D.2.17§5(B)14.

44. C/O Kennedy engaged in behavoir strickly forbben A.D.2.17§5(B)16 and §5(A)1"maintain compliacne with all PREA standards".

45. The P.R.E.A. directive is a federally statutory regulation.

46. C/O Kennedy gave no due process for the deprivation of recreation to the plaintiff at the time during this action, andafter.

47. C/O Kennedy further berated the plaintiff with regard to his disability as plaintiff illistated in paragraphs 6,7,8,22,25,26,27 and 28, for the rest of C/O Kennedy's first shift, with an intensified intention to inflict emotional distress with evil intent, on 4-30-19

48. This was done with retaliational reasoning as C/O Kennedy knew of the excessive risk of harm to the plaintiff, as per A.D.10.19§ 7(D)..."each facility shall develope and maintain a system to alert staff that an inmate requiring a reasonable accomodation is assigned to the housing unit in which the staff are working.... Staff shall only be advised of inmates with mental or physical disabilities when there is a reasonable accomodation requirment or as required for safety and security or other litigimate penal interests." (See exhibit 1).-A.D.10.19

49. As a direct and proximate result of paragraphs 6,7,8,22,25,26,27,28, 39,41,42,43,44, and 47 being carried out with evil intent to

6

inflict emotional distress and elict self-harm to the plaintiff obtained a physical injury.

50. At approximately 4/30/17 during the bottom tiers recreation in B-Block the plaintiff recevied medical treatment form nurse Brain Snyder due to the elicted exacerbation of the plaintiff well known disability, at approximately 3:30pm (See exhibit 2).

51. The plaintiff has been diagnosed with tourettes syndrome since prepubesnce, a disability that is easily stimulated from outside stimuli, emotions, stress, as is definded by the diagnosis.

52. The injury the plaintiff phyisically obtained resulted from the elicting of the symptomatic reactions through C/O Kennedy's tourcherous, malicious, sadistic and reckless behavoir.

53. The physical injury consisted of a large contusion of the left eye socket and left side of face, and a break in the integrity of the skin, which has left a permanant scar on the plaintiff. (see exhibit 2).

54. The plaintiff illistrated in paragraph 36, had a duty to document the sexual harrasment and neglected that duty and further illistrates in paragraph 31 the plaintiff verbally reported C/O Kennedy's reproachful behavior to his superior, Lt. Curren.

55. Plaintiff illistrates that staff neglect and violations of duties owed to the plaintiff contributed to retaliation as the plaintiff demonstrated in paragraphs 32,34,35,36,and 39 including 41,42,43,44,46,47,48, and 54.

56. Plaintiff illistrates in paragraph 33 and 48 that the defendants are all well versed in thier duties and obligations in the procedures, policy, practices, and having had training, electronic signing of acknowledgement of verification that the employees understand

the training they have received. (see exhibit 1).

57. CT-DOC employees have a duty to disclose, as illistrated in paragraph 33 a cumplusitory obligation in procedure, policy, practice, and protocol to document any verbal statement of sexual harassment.

58. Inmates have a right to be free from sexual harrassment.

59. Inmates have a protected right to make a formal complaint through verbal reporting, grievances, and conducting a civil lawsuit.

60. Inmates have a right ot be free from discrimination.

61. Inmates have a right to excercise freedom of speech in reporting such instance as the plaintiffs complaint contains and to be free from retaliation in conducting that excercised protected right.

62. Plaintiff illistrates that such deliberate indiffernce in processing such complaints of sexual harrassment and discrimination contributed to retaliation in paragraph 32,34 and 35.

63. Plaintiff illistrated in paragraphs 32, and 34 perpetrated such deliberate indiffernce as she knew of the allegations and failed to correct the wrong by promptly documenting the verbal reporting by the plaintiff on 4/29/17 to Lt. Curren.

64. Plaintiff illistrated in paragraphs 6,7,8,22,25,26,27,and 28 C/O Kennedy demonstarted and carried out cruel and unusual punishment through wanton infliction of emotion distress with evil intent over a two day span.

65. Plaintiff illistrated in paragraphs 39, 41,42,43,44,47,48,and 49 that the wanton infliction of emotion distress with evil intent was intensified to a degree paragraph 52 demonstrates was to

elict for the pure enjoyment of intensifying symptomatic responses from the plaintiffs delbilitating disability and reasons of retaliation.

66. Due to non-adherence to A.D.'s 2.17;6.12; and 6.6 by Lt. Curren enabled C/O Kennedy to demonstrate reataliation in the form of Intention Infliction of Emotional Distress with Evil Intent,which resulted in plaintiff's self-harm through discfiminating and sexualized harrassing comments about the plaintiff disability.

67. The acts perpetrated by C/O Kennedy are so errgous, abtuse, dehumanizing, tourcherous, malicous, and sadistic that even a lay person would be capable of infernce and conclusion that the acts were perpetrated with the sole purpose and intent to cause harm, inflict pain, anguish, belittle, and to stimulate the easily exacerbated delbilatating and elcit symptomatic responses that define tourettes syndrome.

68. The plaintiff as a direct and proximate result of the respondent's deliberate indifernce to adhere to A.D.'s, statutes, ordinaces, charters, customs, (federal and state) regulations and the town of Newtown, acted under color of state law that the plaintiff now suffers from the increases severity and exacerbation of the delbilitating disability in the form of continous tremors, nightmares, extreme anguish, anxiety, a permanant facial scar due to the instigations of C/O Kennedy and contirbuted to by the omissions and failure of duties, procedures, by Lt. Curren by allowing C/O Kennedy to remain in close proximity and affording C/O Kennedy to opportunity to retaliate against the plaintiff for excercising a protected freedom by the atrocious behavior that is inconcievable to have endured by C/O Kennedy from an individual with an immutable trait.

All in an effort to elict and make symptomatic the plaintiff's already debilitating degree of disability to gain a reaction from the plaintiff in finding enjoyment in creating such intense stress on the plaintiff.

69. The plaintiff is left with in an ongoing cycle of sleeplessness, flashbacks, constant fear as the plaintiff is a ward of the state and been subject to daily discriminations since the inception of his incarceration and the caprious nature of any given Corrections Officer who thinks it's funny of finds pleasure in inflicting such cruel behavior to a level of degree of control and reaction from an individual such as the plaintiff with a sigificant disability as described in the aformentioned paragraphs.

70. C/O Kennedy's actions are clearly reckless in the disciminitory, and sexual harrassment comments having displayed a unrelenting continuance of such discriminating remarks for two days straight with the later day having been intensified in his comments and actions of retaliation.

71. Such cruel and unusual punishment cupabled with the knowledge thats such instigation will put the plaintiff in excessive risk of harm and injury with no concern for the plaintiffs health is so shocking being that C/O Kennedy worked a Mental Health Block filled with others that are acutely sensitive to tention and ambient atomospheres showcase deliberate indiffernce to not only the plaintiff but those also under his watch, care and custody.

72. C/O Kennedy has a duty to provide safety and security and comply with all federal and state statutes and regulations, administrative and unit directives, department and unit policies and proecdures, post orders, and lawful orders/instructions. Respect and protect

10

the rights of inmates, act in a professional manner. Not engaged inabusive, obscene, threatening, intimidating laugue or behavior, engaging in retaliation against an inmate for participating in activities that are protected by law or directive.

73. C/O Kenndy breached that duty by far exceeding the crossing of the line in such activities, utterly intolerable within a civilized community, C/O Kennedy far exceeded the line between malicous, insulting, as mentioned in paragraph 68, it is atrocious, and so sevre, that it in turn caused physical injury through it's unrelenting fashion tantomount to tourcher of the plaintiff.

74. C/O Kennedy was negligent in adherence to his duties as mentioned in paragraphs 33 and 48 and 72.

75. The plaintiff as a direct result suffered physical damages/injury.

76. The plaintiff's emotional distress continous to reverberate to the present date as the baseline of the plaintiff symptoms have regressed to prepubsence and further so with no sign of abatement in sight in the near furture.

77. There is more then a proponderence of evidence in that physical injuries that have come as a result of the hieghtened baseline in symptomatic reaction of the disability.

78. Evidence such as prolonged medical neglect resulting in pulled muscles, joint erotion from constant movement of the motormovements that define tourettes syndrome. Paragraph 68 further gives evidence of a permanant facial scar.

79. The symptomatic response elicted from the plainifff were directly caused by C/O Kennedy's dispicable, depolrable, atrocious, behavior that was tantamount to tourcher. This was the causation of the exacerbation of the plaintiff symptomatic response to such outragous

behavior.

80. The damages the plaintiff now carries are lifelong, in the form of a permanant facial scar, continuous undulating tremors, night terrors, intense anxiety, anguish, the increased baseline of the plaintiff disability. A baseline which has regressed further then when diagnosed in prepubesnce. This baseline continous to regress automisously. The need for the increase inmedications has been a continual matter to regularly follow up on, as the efficacy of any given medication quickly plataeus after mere months of it's application. These damages have far reaching effects as they continue to regress. The plaintiff was an avid painter and artist; however, now the plaintiff cannot simply write due to the sigificance of the tremors and their worsening ungulations. The plaintiff is now bound to the use of a typewriter for all personal and professional correspondences. The plaintiff has been accomodated accordingly; though, the continued supply of typewriter supplies in which to keep the machine opperable has been an entirely nother challenge, despite having a reasonable accomodations for a weekly supply.

<u>Claim For Relief</u>

81. The actions of Defendant Kennedy, who was the perpetrator of the allegation herein complaint, that include discrimination, deliberate indiffernce, cruel and unusual punishment, Intention Infliction Of Emotion Distress With Evil Intent, and retaliation from a protected speech and conduct that was adversely acted upon by the defendant as paragraph 39,41,42,43,47 and 48. The plaintiff illistrated this adverse affect in paragraph 49,50,52, and 53. This constitues the violation of creul and unusual punishemnt of the Eighth Amentment to the U.S. Constitution by way of deliberate indiffernce to serious meducal needs, including the First Amentment

to the U.S.Constitution by way of freedom of speech by way of
retalaition to a protected action, through complaints/grievances.
The defendant shown deliberate indiffernce to the plaintiff's
easily stimulated disability in exhibiting cruel and unusual
punishment as the plaintiff illistrated in paragraph 6,7,8,22,25,2,6,27,
and 28. Further deliberate indiffernce was shown the plaintiff
once the plaintiff informed Lt. Curren his superior of the disciminatory
comment and sexual harrassment comments C/O Kenndey perpetrated
on 4-29-17, as she took some action but failed to document the
verbal reporting of the sexual harrassment cupabled with the
discriminatory comments, as is A.D.6.12 procedure the plaintiff
illistrtates in paragraph 32,33,34,35 and 36. Directly due to
this inaction by Lt. Curren described in paragraph 39 C/O Kennedy
was enabled to retaliate against the plaintiff. The defendant
retaliated in a manner so atroious of a Corrections Officer of
a Mental Health Facility and Block acted in such a manner as
the plaintiff went togreatdetails in the depth of depravity that
C/O Kennedy reproachful behavior reached in inflicting Intentional
Infliction of Emtional Distress with Evil Intent as to result
in the plaintiff sustaining a self inflicted injury due to the
tourcherous behavior demonstrated by C/O Kennedy over two day
period. The duty C/O Kennedy negligently adhered to his obligations
to the plaintiff health and safety. C/O Kennedy knew of the plaintiff's
disability and disregarded the excessive risk of injury his acts
of reckless intentional behavoir. Through C/O Kennedy's disregard
of excessive risk to the plaintiff's health / saftey he breached
that duty owed to the plaintiff, as per A.D.'s (see exhibit 1);
A.D.6.12§11 and other A.D's in paragraph 38.C/O Kennedy knew
of the sexual harassment obligations in policy having elctronically
signed that he understood. C/O Kennedy knew or should know that
discrimination is illegal, yet, breached these regulations and
law, statutes.

13

It is due to the neglience of a sigificant nature in many aspect of the duties and obligatory responsiblities that are well past a sadistic and meaned purposed intnetnion to inflict of such atrocous condictions cupaled with the knowledge of the plaintiff's disability by C/O Kennedy that lead to the caustation of the damages the plaintiff incurred as a direct and proximate result ofC/O Kennedy's intentional infliction of emotional distress for the sole purpose to elict symptomatic responses from the plaintiff delbilitating disdability. The damages obtained from the non adherence to duty owed to the plaintff from C/O Kennedy casued or was the reason of cause of the injuries obtained by the breach of C/O Kennedys atrocous behavior, which in turn, gave rise the the exacerbation through sadicstic instigations of C/O Kennedy in elicting the symptoms the plaintiff suffers from on a daily basis. C/O Kennedy further ramped up the intensity of these discriminations the following day after the plaintiff reported he already malcious, tourcherous, and recklessly demonstarted cruel and unusual punishemnt through reporting his behavior to his superior officer Lt. Curren by locking the plaintiff inside his cell depriving him of the first shift allottement in retalaition of the plaintiff's complaint. This shows a direct relation of cause and affect in which leaves no room to devert from it being the sole and only reason for the atrocous actions of C/O Kennedy in response to the plaintiff's protected freedom of speech in reporting a complaint and greivance. Damages are set forth initally in the Medical Incident Report (see exhibit 2); however, the damages have had further lasting affects of the plaintff in the rise of the heightened baseline in the symptomatic reaction form the plaintiff's disability. In the form of continued prolonged

medical neglect in treatment of physical injuries as direct or
proximate result of intense motormovements through hyperextention
of extremities, cleching taught the full body which has lead
to joint erotion, pulled muscles, the permanant facial scar from
the date of retaliation of C/O Kennedy's behaviors.  This includes
the fact that the facial scar is a lifelong atrobute of the plaintiff's
appearance to the public may cause or bring into consider ation
the possibility in lack. of employement from such facial scar
in a public serives job, continous tremors , ungulating movement
from the sypmtom defining the characterists of the diagnosis
of tourette syndrome, night terrors and nightmares, anguish,
self-esteem decrease in confidence in how he presents himself
to the world on a daily basis and most importantly the increase
baseline to the already alarming dergree of the disability of
tourettes the plaintiff had before the events herein complaint.
The baseline continues to regress automisously. The conitued
need for increase inmedications of a ongoing matter for the
regular follow-ups necessary for an individual with tourettes
syndrome to see a nrueologist based upon the fact the any given
medictions efficacy will be in need of constant adjustment of
the addition of new medication to keep the involuntary motormovement
and vocalizations in check, as medication are known to acclaimate
after introduction into the body system and plateau after only
mere months of it's starting application. These damages so far
listed are  have far reaching affect in the  future. There is
no garentee this symptoms will abate as the disability is one
of an anotomoical loss affecting the nurological system. Though
the brain is plasic in nature. It's ability to rebound diminishes
over time. The plaintiff is 1/3rd  aged and passed the prime

15

of most effective rebounding in plaisicisty. This will require
countless hours of work in a counseling setting of theropy sessions.
That include countless hours of doctor visits, in the readjusting
of medications and constant deligance in continuos record keeping
of progress and/or regression from what-ever applied counseling,
medications, and doctor visits that have been required from the
plaintiff in the past and will have an increased requirement
within the forseeable future. As mentioned before the plaintiff
is 1/3rd through life exceptency and had 2/3rds left to live
with an even further delbilitating degree of disability all due
to the caprious whim and pleasure of C/O Kennedy in tourchering
the plaintiff's condition knowing full well having worked in
B-Block many months the toll in takes on the plaintiff on a daily
basis being incarcerated in the same block as the Defendant and
the daily interactions with the plaintiff in the course of a
daily operating procedure. This constitutes the Tort of Intentional
Infliction of Emotion Distress with Evil Intent.

82. In summation C/O Kenndy was aprised of the plaintiff's disability
of safety and secrity purposes for penal interestes and with
reckless disregard to the excessive risk of harm, injury, and
health, mentally acted with a culpable state of mind to inflict
such errgous, atrosous, tourcherous, sadistic behavior to elict
the plaintiff's diasbility to rise to a level and degree in which
self-harm was the goal in mind for C/O Kennedy. C/O Kennedy was
deliberately indifferent to the serious health needs of the plaintiff.
He demonstrated without a reasonable doubt cruel and unusual
punishment in acting in the manner aformention in herein complaint
and retalaited as a direct result of the plaintiff reporting

such behaviors perpetrated by C/O Kennedy on 4-29-17 with and amplified intention once having been aprised of the complaint against him being reported by Lt. Curren-though Lt. Curren did not document the verball reporting as is procedural duty to do promplty that gave rise to enable C/O Kenndy to retalaite on 4-30-17 such a deplorable manner which would shock the conscous of any lay person that a Corrections Offfcier in the responsiblities of duties in a mental health block would act in such a manner that even animals have orginaiations to advocate for them when such negligent, tourcherous, atrosous, and sadistic are being perpetrated against them let alone this conduct being done in a mental health block form someone with a immutable disability such as the plaintiff has been diagnosed since prepubesnce from an intrusted individual as a Correction Officer to maintain safety and securty for the very individuals his duty implies him to conduct in a respectfully, law abiding manner. C/O Kennedy is held by C.G.S.Tile 18.

WHEREFORE, the plaintiff requests the following relief:

   A. A declatory judgement stating that:

      1. The actions of Defendant C/O Kennedy violated the plaintiff's right's by failure to uphold the plaintiff's First, Eighth Amendment rights, discrimination of such rights.

      2. The actions of Defendant C/O Kennedy violated the state tort law of Intention Infliction Of Emotional Distress With Evil Intent

      3. Immediately arrange for the plaintiff to be evaluated by a compotent mental health professional specialist in no way connected to (CMHC), to establish a treatment plan and carry out without delay the treatment directed by such specialist.

    4. Immediately arrange for the plaintiff to be evaluated by a compotent orthopedic specialist in no way connected (CMHC), and carry out without delay any treatment directed by such specialist regarding plaintiff's head and neck.

    5. Having all costs regarding perscriptions, medical equpment, medical expenses for life, regardless of cost, doctor, hospital visits, at no cost connected to health issues arising from incident.

B. Award Compensatory damages in the following amount:

    1. $ 500,000 jointly and severly against Defendant C/O Kennedy for the deliberate indiffernce to a serious medical need, injuries sustained, emotional injuries for cruel and unusual punishment, retalaition of a protected activity, in violation of the plaintiff's right's of the First, Eighth Amendment right's to the U.S. Constitution, including the violation of state tort law of Intentional Infliction of Emotional Distress with Evil Intent

C. Award punitive damages in the folloing amount:

    1. $250,000 against the Defendant C/O Kennedy for the deliberate indiffernce to a serious medical need, injuries sustained, emotional injuries for cruel and unusual punishment, retalaition of a protected activity, in violation of the plaintiff's right's of the First, Eighth Amedments to the U.S. Constitution, including the violation of state tort law of Intention Infliction of Emotional Distress with Evil Intent

D. Attorney fee's(any and/or all)

E. Court fee's (any and/or all)

F. Specialist fee's (any and/or all)

G. Grant such other relief as it may appear that the plaintiff is entitled.

Respectfully submitted,

DATE: 11/21/19

Signature: _____
Micah Thaisz #411071
P.O. BOX 100
SOMERS, CT 06071
OSBORN C.I.

VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Micah Thaisz, declare under penaly of perjury that the foregoing is true and correct to the best of my knowledhe and belief.

DATED: October  this day 18  ,2019

BY: _____

Micah Thaisz #411071
P.O.BOX 100
SOMERS, CT 06071
OSBORN C.I.