

| State of Connecticut Department of Correction | Directive Number 1.1 | Effective Date 4/4/2014 | Page 1 of 2 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Supersedes Mission Statement and Vision, dated 4/15/2011 | | |

| Approved By: *James E. Dzurenda* (signature) Commissioner James E, Dzurenda | Title Mission Statement and Vision |
|---|---|

1. **Policy.** The Connecticut Department of Correction's Mission Statement and Vision shall be the Department's primary directive. The statements of philosophy and goals contained in this directive shall serve as the foundation for all Department and unit policies.

2. **Authority and Reference.**

   A. Public Law 108-79 Prison Rape Elimination Act of 2007.
   B. 28 CFR, 115 Prison Rape Elimination Act National Standards.
   C. Connecticut General Statutes, Section 18-81.
   D. Administrative Directives 1.13, Code of Ethics; 2.1, Equal Employment Opportunity and Affirmative Action; 2.2, Sexual Harassment; 2.17, Employee Conduct; 2.22, Workplace Violence Prevention Policy and 6.12 Sexual Assault Prevention and Intervention Policy.
   E. American Correctional Association, Standards for the Administration of Correctional Agencies, Second Edition, April 1993, Standard 2-CO-1A-04.
   F. American Correctional Association, Standards for Adult Correctional Institutions, Fourth Edition, January 2003, Standards 4-4001, 4-4002 and 4-4004.
   G. American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-7D-01 and 4-ALDF-7D-03.
   H. American Correctional Association, Standards for Adult Probation and Parole Field Services, Third Edition, August 1998, Standard 3-3002 and 3-3008.
   I. American Correctional Association, Standards for Correctional Training Academies, First Edition, May 1993, Standards 1-CTA-1A-01 and 1-CTA-1A-03.

3. **General Principles.**

   A. The Department of Correction is an integral part of the criminal justice system. It is responsible and accountable to our state and its citizens.
   B. We partner with other federal, state, local, and criminal justice agencies to expand our efforts in reducing crime, and to enhance our proactive role in the development of criminal justice policy.
   C. We take pride in our service and commitment to the citizens of the State of Connecticut.

4. **Mission Statement.** The Department of Correction shall strive to be a global leader in progressive correctional practices and partnered re-entry initiatives to support responsive evidence-based practices aligned to law-abiding and accountable behaviors. Safety and security shall be a priority component of this responsibility as it pertains to staff, victims, citizens and offenders.

| Directive Number | Effective Date | Page 2 of 2 |
|---|---|---|
| 1.1 | 4/4/2014 | |
| Title | | |
| Mission Statement and Vision | | |

5. <u>Motto</u>. The Department of Correction motto of P.R.I.D.E. shall represent the Department's values of: Professionalism, Respect, Integrity, Dignity, and Excellence.

6. <u>Vision</u> Re-victimization is reduced by providing offenders the tools and resources to make positive changes for a successful transition back into the community.

7. <u>Dissemination of Mission Statement</u>. The mission statement shall be widely disseminated to all employees, offenders, and the general public. The mission statement shall appear in the front of all Department publications. It shall be printed in all offender newspapers and posted prominently in all Department units as well as in areas that may be commonly viewed by the public, staff, and offenders. Copies shall be given to all new employees undergoing orientation training.

8. <u>Annual Review</u>. Each year, as part of the Department policy review process, the mission statement shall be examined. When warranted, recommendations for changes shall be made by a committee convened by the Commissioner for that purpose. The Committee shall include line employees within the Department. The committee shall submit its report to the Commissioner.

9. <u>Unit Mission Statements</u>. Each unit within the Department shall develop a unit mission statement, consistent with the Department's Mission Statement, which is applicable to the unit. Unit mission statements shall be reviewed and revised annually by a committee appointed by the Unit Administrator. The committee shall consist of members who represent all levels of employees within the unit including line operating staff as well as the various disciplines within the unit. The committee shall submit its report to the Unit Administrator.

10. <u>Exceptions</u>. Any exceptions to the provisions in this Administrative Directive shall require prior written approval from the Commissioner.

| State of Connecticut Department of Correction | Directive Number 1.10 | Effective Date 05/28/2014 | Page 1 of 6 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Supersedes Investigations, dated 9/1/2011 | | |
| Commissioner James E. Dzurenda | Investigations | | |

1. <u>Policy</u>. The Department of Correction shall review and investigate significant incidents and/or allegations of wrongful acts as appropriate.

2. <u>Authority and Reference</u>.

   A. Public Law 108-79, Prison Rape Elimination Act of 2003.
   B. 28 C.F.R. 115, Prison Rape Elimination Act National Standards.
   C. Connecticut General Statutes, Chapters 14, 21, 29, 53, 53a and 55.
   D. Regulations of Connecticut State Agencies Section 18-81
   E. Administrative Directives 1.6, Monthly and Annual Reports;1.12 Employee Legal Counsel/Representation; 2.1, Equal Employment Opportunity and Affirmative Action; 2.2, Sexual Harassment; 2.6, Employee Discipline; 2.17 Employee Conduct;2.21, Smoke and Drug Free Workplace;2.22, Workplace Violence Prevention Policy;2.24, Employee Arrests, Restraining Orders and Criminal Summons; 6.6 Reporting of Incidents; 6.9, Control of Contraband and Physical Evidence,6.12; Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention.
   F. American Correctional Association, Standards for Adult Correctional Institutions, Fourth Edition, January 2003, Standard 4-4231.

3. <u>Definitions and Acronyms</u>. For the purposes stated herein, the following definitions and acronyms apply:

   A. <u>Administrative Investigation</u>. An official DOC fact-finding review conducted by trained Department investigators.
   B. <u>Affirmative Action Investigation</u>. An Administrative Investigation conducted by the Department's Affirmative Action Unit.
   C. <u>Criminal Investigation</u>. An official inquiry conducted by an external law enforcement agency.
   D. <u>DOC</u>. Department of Correction.
   E. <u>Electronic Monitoring/Recording Device</u>. Audio/video equipment used to gather intelligence during an authorized Administrative Investigation.
   F. <u>External Investigation</u>. An official inquiry conducted by an authorized agent of a governmental entity with oversight over all, or any part of, government operations.
   G. <u>Initial Inquiry</u>. An investigation into an alleged incident in which the findings may be sufficient to take disciplinary action or result in an Administrative Investigation.
   H. <u>Investigator</u>. An employee trained and assigned to conduct investigations.
   I. <u>PREA</u>. Prison Rape Elimination Act
   J. <u>PREA Investigation</u>. An Administrative Investigation conducted by the PREA Unit regarding an allegation or instance of sexual abuse or sexual harassment involving an inmate.
   K. <u>Preponderance of Evidence</u>. Proof by evidence that, compared with evidence opposing it, leads to the conclusion that the fact at issue is more probably true than not.
   L. <u>Security Division Investigation</u>. An Administrative Investigation authorized by the Commissioner or designee and conducted by the Department's Security Division.
   M. <u>Sexual Abuse</u>. For the purpose of this directive, Sexual Abuse shall

22

be defined in accordance with Section 3 of A.D. 6.12 Inmate Sexual Abuse/ Sexual Harassment Prevention and Intervention.

N. <u>Sexual Harassment.</u> Sexual Harassment shall be defined in accordance with A.D. 2.2 Sexual Harassment and A.D. 6.12 Inmate Sexual Abuse/ Sexual Harassment Prevention and Intervention.

O. <u>Substantiated Allegation.</u> An allegation that was investigated and determined based upon the preponderance of the evidence to have occurred.

P. <u>Unfounded Allegation.</u> An allegation that was investigated and determined not to have occurred.

Q. <u>Unsubstantiated Allegation.</u> An allegation that was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred.

4. <u>Criminal Investigations.</u> Criminal investigations, to include allegations of sexual abuse, shall fall under the jurisdiction of the Connecticut State Police. When a crime is detected Department personnel shall secure the crime scene in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence. Department personnel may assist the Connecticut State Police upon request, but shall not independently conduct any type of investigative activities, to include conducting interviews of any type. An Administrative Investigation may be conducted by the Department upon authorization of the Connecticut State Police to do so.

When criminal activity is discovered during a Department investigation, the matter shall be referred to the Connecticut State Police through the appropriate chain of command.

5. <u>General Principles.</u>

A. <u>Cooperation Required.</u> The Department and its employees shall cooperate with any investigation in accordance with Administrative Directive 2.17, Employee Conduct. Failure to cooperate fully may subject an employee to disciplinary action, up to and including dismissal.

B. <u>Recording of Interview.</u> An Administrative Investigation interview of an employee shall be recorded. Upon request, the employee may be given a complete and unaltered copy of the recorded interview. An interview recording shall be maintained as part of the investigation file.

C. <u>Investigation Acknowledgement.</u> CN 11001, Employee Rights and Responsibilities Acknowledgement shall be signed and dated by both the investigator and interviewee prior to the initiation of an Administrative Investigation or Initial Inquiry interview.

6. <u>Initial Inquiries and Administrative Investigations.</u>

An Initial Inquiry shall be initiated by a Unit Administrator or higher authority.
An Administrative Investigation shall be initiated by a District Administrator or higher authority.

A. <u>File.</u> Upon initiation of an Initial Inquiry or Administrative Investigation a case file shall be created and a unique number shall be assigned to the case. An Initial Inquiry shall be prefixed by the letters "II," an Administrative Investigation shall be prefixed by two (2) or three (3) letters which uniquely identifies the investigating body, and a Security Division Investigation shall be prefixed by the letters "SD."

| Directive Number 1.10 | Effective Date 05/28/2014 | Page 3 of 6 |
|---|---|---|
| Title | Investigations | |

The letter prefix shall be followed by a dash (-), the last two (2) digits of the calendar year, a dash (-), and a sequential uninterrupted numerical listing of each investigation conducted by the division, district or unit.

Investigations shall be tracked utilizing Attachment A Investigation Routing Form.

B.    Conduct of Investigation. An investigator assigned to conduct an investigation shall gather relevant information as necessary to conduct the investigation. No person shall be assigned to conduct an investigation that is involved in, or witness to, the matter under investigation. The investigator shall not recommend a specific level of discipline; however, as a result of the preponderance of the evidence, the investigator may determine whether the allegation is substantiated, unsubstantiated or unfounded. Each relevant witness shall be interviewed.

C.    Acknowledgement of Employee Rights and Responsibilities. Any employee interviewed during the course of an investigation or Initial Inquiry shall be advised verbally of their rights and responsibilities. The employee shall then read and sign CN 11001, Employee Rights and Responsibilities Acknowledgement prior to the start of an Initial Investigation Inquiry interview. The employee shall be advised of the following:

1.    The general nature of the investigation;
2.    If the employee is the subject of the investigation or if the employee is thought to possess information relevant to the investigation; and,
3.    The right to union or legal representation as appropriate and in accordance with the prevailing union contract or state personnel procedures.

D.    Reporting of Incidents. An employee involved in, or witness to, an incident shall be required to complete and sign an incident report in accordance with Administrative Directive 6.6, Reporting of Incidents except as stated in Administrative Directive 2.2, Sexual Harassment. An employee may be required to complete and sign a written statement as part of an investigation.

E.    Interview Summary. Upon completion of an interview, a written summary of the interview shall be drafted by the investigator utilizing form CN 11002, Interview Statement. The first and last word of each question and response of the completed written summary shall be initialed and dated by the person being interviewed. The interviewer shall sign and date the summary.

F.    Supporting Documentation. Incident reports, photographs and other relevant documentation shall be included in the investigation file.

G.    Evidence. All evidence relevant to the investigation shall be secured and accounted for in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence.

H.    Report Format. Any Initial Inquiry or Administrative Investigation shall be presented in the format as outlined in Attachment A, Standard Investigation File Format.

I.    Closure. An investigation shall be closed only when accepted by the Unit Administrator or higher authority who approved/directed the investigation. A copy of the investigation shall be forwarded to the appropriate individual who authorized the investigation through the

chain of command. The original report shall be maintained by the unit that conducts the investigation.

J.  **Employee Discipline.** Discipline resulting from an investigation shall be dispensed in accordance with Administrative Directive 2.6, Employee Discipline.

K.  **Recommendations.** When appropriate, an investigation shall include recommendations for system improvement based upon the conclusions of such investigation.

L.  **Security and Confidentiality.** Each investigation shall be maintained in a secure and confidential manner. Information that may jeopardize the integrity of an investigation shall not be disclosed while an investigation is in progress except to law enforcement agencies, authorized Department personnel and other agencies as authorized by law. An employee who has been the subject of an investigation shall be notified in writing of the outcome by the head of the division, district or unit completing the investigation (i.e., Director of Security, Director of Equal Opportunity Assurance, PREA Unit Administrator District or Unit Administrator).

M.  **Disclosure.** Complaints and investigative information shall be kept confidential unless disclosure is required by Chapter 14 (Freedom of Information Act) or Chapter 55 (Personal Data Act) of the Connecticut General Statutes, other applicable laws or by court order.

7.  **Security Division Investigations.**

A.  **Authorization.** Security Division Investigations shall require written authorization from the Commissioner or designee. A Deputy Commissioner may request initiation of a Security Division Investigation. However, continuation of the investigation shall require written authorization of the Commissioner or designee within five (5) business days.

B.  **Involvement of Facility Personnel.** Facility based personnel shall Not conduct investigative activities when a Security Division Investigation has been authorized or is ongoing; to include conducting interviews of any type unless requested to do so by Security Division.

C.  **Joint Law Enforcement Investigation.** Requests for assistance in a joint law enforcement investigation from an outside law enforcement agency must be authorized by the Commissioner or designee and forwarded to the Director of Security for appropriate action.

D.  **Joint Administrative Investigation.** Requests for a joint Administrative Investigation with the Department's contracted health care provider or other agencies must be authorized by the Commissioner or designee and forwarded to the Director of Security for appropriate action.

E.  **Timeliness.** An investigation shall normally be completed within 60 business days. In the event the investigation exceeds 60 business days, the investigator shall forward a request for an extension of the investigation to the Director of Security, as appropriate. The investigator shall indicate the reasons for the extension. A status report of all ongoing investigations shall be included in the monthly report in accordance with Administrative Directive 1.6, Monthly and Annual Reports.

F.  **Closure.** Security Division Investigations shall be closed only upon final review by the Commissioner.

8.  **PREA Unit Investigations.**

A.  **Authorization.** PREA Unit investigations shall require written authorization from the Commissioner or designee. A Deputy

| Directive Number 1.10 | Effective Date 05/28/2014 | Page 5 of 6 |
|---|---|---|
| Title | | |
| Investigations | | |

Commissioner or designee may request initiation of a PREA Unit Investigation. However, continuation of the investigation shall require written authorization from the Commissioner or designee within five (5) business days.

B.  Involvement of Facility Personnel. Facility based personnel shall not conduct investigative activities when a PREA Unit Investigation has been authorized or is ongoing, to include conducting interviews of any type unless requested to do so by the PREA Unit.

C.  PREA Investigations. PREA Investigations shall, at a minimum, review direct and circumstantial evidence, interview all alleged victims, suspected perpetrators and any relevant witnesses, shall review prior complaints and reports of sexual abuse involving the suspected perpetrator. PREA Unit investigations shall also: (1) include an effort to determine whether staff actions or failures to act contributed to sexual abuse; (2) shall be documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings. When the evidence appears to support criminal prosecution, the Connecticut State Police shall be notified. If the Connecticut State Police determine that no criminal aspect exists the PREA Investigation Unit may conduct compelled interviews only after consulting with the Office of the State's Attorney as to whether compelled interviews would be an obstacle to subsequent criminal prosecution.

All contacts with Connecticut State Police and State's Attorneys shall be properly documented in the investigation file to include date, time, and name of person contacted.

The credibility of an alleged victim, suspect or witness shall be assessed on an individual basis and shall not be determined by the individuals' status as inmate or staff. The use of polygraphs is prohibited.

Substantiated allegations of conduct that appears to be criminal shall be referred for prosecution.

The departure of the alleged abuser or victim from employment or control of the Department shall not provide a basis for terminating an investigation.

D.  Joint Law Enforcement Investigation. Requests for assistance in a joint law enforcement investigation from an outside law enforcement agency must be authorized by the Commissioner or designee and forwarded to the Administrator of the PREA Unit for appropriate action.

E.  Joint Administrative Investigation. Requests for a joint Administrative Investigation with the Department's contracted health care provider or other agencies must be authorized by the Commissioner or designee and forwarded to the Administrator of the PREA Unit for appropriate action.

F.  Timeliness. An investigation shall normally be completed within 60 business days. In the event the investigation exceeds 60 business days, the investigator shall forward a request for an extension of the investigation to the Agency PREA Coordinator. The investigator shall indicate the reasons for the extension. A status report of all ongoing PREA Unit investigations shall be included in the monthly report in accordance with Administrative Directive 1.6, Monthly and Annual Reports.

G.  Reporting to Inmates. Following an investigation into an inmate's allegation that he or she suffered sexual abuse in a Department facility, the PREA Unit shall inform the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated or unfounded. If the PREA Unit did not conduct the investigation, it shall request relevant information from the investigative agency in order to inform the inmate. The PREA Unit's obligation to report

the above to an inmate shall terminate if the inmate is released from Department custody.

H. <u>Records Retention</u>. The PREA Unit shall retain all investigation reports for:

    1) as long as the alleged abuser is incarcerated or employed by the Department, plus five years; or,

    2) as long as required by State records retention policies; or,

    3) as required by a litigation hold notice, whichever is longer.

9. <u>Affirmative Action Investigations</u>. Allegations of discrimination or sexual harassment involving staff members, other than allegations of sexual abuse or sexual harassment covered by PREA, shall be pursued through an Affirmative Action Investigation in accordance with Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action and 2.2, Sexual Harassment. The Director of Equal Opportunity Assurances shall develop and maintain a case file system for Affirmative Action Investigations.

10. <u>System Improvement</u>. At the discretion of the Commissioner, results of an Administrative Investigation shall be referred to an appropriate administrator(s) for implementation of system improvements based upon the recommendations made in accordance with Section 6(K) of this Directive.

11. <u>Training</u>. Each investigator assigned to work with the Security Division and/or PREA Unit shall complete an approved training program prior to conducting an investigation.
Investigators assigned to the Affirmative Action Unit shall receive specialized training provided by the Commission on Human Rights and Opportunities and the Permanent Commission on the Status of Women concerning state and federal discrimination laws and techniques for conducting investigations of discrimination complaints.

12. <u>Inmate Interviews by Outside Law Enforcement Agencies</u>. Inmates may be interviewed by outside law enforcement agencies as appropriate. An inmate who decides to cooperate with an outside law enforcement agency investigation shall indicate such cooperation by signing CN 11003, Inmate Voluntary Interview Authorization prior to the interview. Completed authorization forms shall be maintained in Section 6 of the inmate's master file.

13. <u>Forms and Attachments</u>. The following forms and attachments are applicable to this Administrative Directive and shall be utilized for their intended function:

    A. CN 11001, Employee's Rights and Responsibilities Acknowledgment;
    B. CN 11002, Interview Statement;
    C. CN 11003, Inmate Voluntary Interview Authorization; and,
    D. Attachment A, Standard Investigation File Format.
    E. Attachment B, Investigation Routing Slip

14. <u>Exceptions</u>. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

| ![seal] State of Connecticut<br>Department of Correction | Directive Number<br>1.13 | Effective Date<br>4/15/2005 | Page 1 of 5 |
|---|---|---|---|
| **ADMINISTRATIVE<br>DIRECTIVE** | Supersedes | New Directive | |
| Approved By<br><br>*Theresa C. Lantz* | Title<br><br>Code of Ethics | | |

1. <u>Policy</u>. Employees of the Department of Correction, as representatives of the State of Connecticut, are assigned to positions of trust and responsibility that require them to observe the highest ethical standards. Strict compliance with the provisions of this directive is an essential aspect of employment with the Department.

2. <u>Authority and Reference</u>.

   A. United States Code, 5 USC Sections 1501 through 1508.
   B. Connecticut General Statutes, Sections 1-79 through 1-86, 1-86e through 1-89a, 5-266a and 18-81.
   C. Executive Order No. 1, Governor Rell.
   D. Regulations of Connecticut State Agencies, Sections 1-81-1, 1-81-14 through 1-81-38 (inclusive) and 5-266a-1.
   E. DAS General Letter No. 214-D, revised 1995.
   F. American Correctional Association, Standards for the Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-1A-05, 2-CO-1A-29, 2-CO-1C-04 and 2-CO-1C-24.
   G. American Correctional Association, Standards for Adult Correctional Institutions, Fourth Edition, January 2003, Standards 4-4012, 4-4024, 4-4048 and 4-4069.
   H. American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-7B-05, 4-ALDF-7C-02, 4-ALDF-7C-03, 4-ALDF-7D-06 and 4-ALDF-7E-01.
   I. American Correctional Association, Standards for Adult Probation and Parole Field Services, Third Edition, August 1998, Standards 3-3019, 3-3032, 3-3047, 3-3068 and 3-3069.
   J. American Correctional Association, Standards for Correctional Training Academies, First Edition, May 1993, Standards 1-CTA-1A-11, 1-CTA-1C-01 and 1-CTA-1C-12.
   K. Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action; 2.2, Sexual Harassment, 2.17, Employee Conduct and 2.22, Workplace Violence Prevention Policy.

3. <u>Definitions</u>. For the purposes stated herein, the following definitions apply:

   A. <u>Gift</u>. A gift shall mean anything of value, which is directly and personally received, unless consideration of equal or greater value is given in return.
   B. <u>Substantial and Potential Conflicts</u>. In reference to section 4(B)(1) of this directive, financial interests that "substantially conflict" include those from which the employee, the employee's spouse, dependent child or associated business would derive a direct monetary gain or suffer a direct monetary loss by reason of the employee's official activity. If the employee is faced with taking official action that will directly affect the employee's financial interest, or that of a family member or associated business, distinct from others in the

| Directive Number | Effective Date | Page 2 of 5 |
|---|---|---|
| 1.13 | 4/15/2005 | |
| Title | | |
| Code of Ethics | | |

employee's occupation or group (e.g., taking official action on
the awarding of a contract to a private business the employee
owns), the employee has a "substantial conflict" of interest
under Section 1-85 of the Connecticut General Statutes and may
not act under any circumstances. The employee shall not be
considered to have a substantial conflict if the employee's
financial interest is shared by the other members of the
employee's profession, occupation or group. If, in the discharge
of the employee's official duties, the employee is required to
take action that would directly affect the employee's financial
interest, or that of a family member (i.e., the employee's
spouse, parent, brother, sister, child or child's spouse) or a
business with which the employee is associated, the employee may
have a "potential conflict" of interest. In that case, unless the
interest is insignificant (i.e., less than $100 in a calendar
year), or no different than that of a substantial segment of the
general public (e.g., a regulatory official approving an increase
in residential electric rates), the employee must follow the
rules outlined in Section 1-86 of the Connecticut General
Statutes. Specifically, the employee must prepare a written
report that describes the potential conflict and submit the
report to the appropriate supervisor who shall reassign the
matter.

4.   <u>Ethical Conduct</u>. All Department employees shall comply with the
requirements set forth in the Connecticut State Ethics Commission Code
of Ethics for Public Officials. Furthermore, all Department employees
shall comply with all the provisions of this directive regarding their
ethical conduct and obligations as employees.

A.   Employees of the Department of Correction shall:

1.   Strive in their professional and personal life to exemplify
the Department's motto of P.R.I.D.E., <u>P</u>rofessionalism,
<u>R</u>espect, <u>I</u>ntegrity, <u>D</u>ignity, and <u>E</u>xcellence.

2.   Uphold the Department's fundamental duty to protect and
serve the public, protect staff, and to safeguard the lives
and property of offenders under the Department's
supervision.

3.   Treat, with respect and dignity, the public, staff, and
offenders in accordance with Administrative Directive 2.17,
Employee Conduct.

4.   Ensure a workplace free of sexual harassment,
discrimination, and workplace violence in accordance with
Administrative Directives 2.1, Equal Employment Opportunity
and Affirmative Action; 2.2, Sexual Harassment, 2.17,
Employee Conduct and 2.22, Workplace Violence Prevention
Policy.

5.   Be firm, fair, and consistent in the performance of all
their assigned duties.

6.   Comply with all federal and state laws, in addition to the
regulations of the Department in accordance with
Administrative Directive 2.17, Employee Conduct.

7.   Promptly report any corrupt, illegal, unauthorized, or
unethical behavior.

| Directive Number | Effective Date | Page 3 of 5 |
|---|---|---|
| 1.13 | 4/15/2005 | |
| Title | | |
| Code of Ethics | | |

8.   Honor the confidentiality of information that has been entrusted to them in the performance of their duties.

9.   Ensure objectivity in the course of their duties.

10.  Maintain professional integrity in all interactions with offenders.

11.  Dedicate themselves to the highest ideals of their profession as a correctional professional.

B.   <u>Ethics Code Prohibitions</u>. The following shall be strictly prohibited for employees of the Department of Correction:

1.   Any financial interest or engagement in any business, employment, transaction or professional activity, which "substantially conflicts" with the proper discharge of the employee's duties and responsibilities or employment in the public interest.

2.   The acceptance of outside employment that impairs the employee's independent judgment as to his/her official duties or requires or induces the employee to disclose confidential information gained while employed by the Department of Correction.

3.   The employee's use of his/her public position or any confidential information gained while employed by the Department of Correction for the employee's financial benefit or that of any employee family member (i.e., spouse, child, child's spouse, parent, brother or sister) or "associated business."

4.   The solicitation or acceptance of anything of value including, but not limited to, a gift, loan, political contribution, reward or promise of future employment based on an understanding that the employee's official action will be influenced thereby.

5.   Entrance into a contract with the State valued at $100 or more, unless the contract has been awarded through an open and public process. Nor may any member of the employee's family or a business with which the employee is associated with, enter into any such contract unless awarded through an open and public process.

6.   Acceptance of any gift (s) from a lobbyist or a representative of a lobbyist. Nor may any member of the employee's staff or immediate family knowingly accept a gift from a lobbyist or his/her representative. Any employee who receives a gift from a lobbyist or a representative of a lobbyist shall complete CN 11301, Gift Acknowledgment and Return Form. The completed CN 11301, Gift Acknowledgment and Return Form shall be attached to the gift and returned to the sender. A copy of the completed CN 11301, Gift Acknowledgment and Return Form shall also be forwarded to the Department's Ethics Liaison Officer.

7.   Acceptance of any gift from, or provision of any gift to, any person doing business with, seeking to do business with, or any person who is directly regulated by the Department of Correction. Any employee who receives a gift from any person doing business with, seeking to do business with, or any person who is directly regulated by the

| Directive Number | Effective Date | Page 4 of 5 |
|---|---|---|
| 1.13 | 4/15/2005 | |
| Title | | |
| Code of Ethics | | |

Department of Correction shall complete CN 11301, Gift Acknowledgment and Return Form. The completed CN 11301, Gift Acknowledgment and Return Form shall be attached to the gift and returned to the sender. A copy of the completed CN 11301, Gift Acknowledgment and Return Form shall also be forwarded to the Department's Ethics Liaison Officer.

8. Acceptance of a fee or honorarium for an article, appearance or speech, or for participation in an event in the employee's official capacity. However, the employee is permitted to accept necessary expenses incident to such activity. If the employee is reimbursed for such expenses, the employee must file a report with the Ethics Commission within 30 days.

9. Interference with or solicitation of lobby contracts for, or on behalf of, any person.

10. Representing another for compensation, or being a member of a business that represents a client for compensation before various enumerated state agencies (e.g., Department of Motor Vehicles, Department of Public Utility Control, etc.).

C. <u>Political Activity by Department of Correction Employees</u>. Section 5-266a of the Connecticut General Statutes and the regulations promulgated thereunder, as well as federal law, govern political activities of classified state employees. DAS General Letter No. 214-D sets out in detail the statutes, regulations, and policy concerning political activity of employees in the classified service.

In general, employees of the Department of Correction may not:

1. Engage in political activity while on duty or during time worked when the employee is being paid by the State of Connecticut.

2. Use their official authority or influence to (1) interfere with or affect the result of an election or a nomination for office, or (2) directly or indirectly coerce a state or local officer or employee to pay, lend or contribute anything of value to a party, committee, organization, agency or person for political purpose.

3. Campaign for a candidate in an election by making speeches, writing on behalf of the candidate or making contributions of time and money to political parties, committees, or other agencies while on duty or within any period during which you are expected to perform services for which the employee receives compensation from the State.

4. Utilize state funds, supplies, vehicles or facilities to secure support for or oppose any candidate, party, or issue in a political partisan election.

5. In seeking or holding municipal office or seeking state office, engage in political activity or in the performance of the duties of such office while on state duty or within any period during which the employee is expected to perform services for which the employee receives compensation from the State.

| Directive Number | Effective Date | Page 5 of 5 |
|---|---|---|
| 1.13 | 4/15/2005 | |
| Title | | |
| Code of Ethics | | |

D. **Continued Responsibilities Subsequent to Employment with the Department of Correction.** All employees of the Department of Correction are required to comply with Sections 1-84a and 1-84b of the Connecticut General Statutes, as well as the Regulations of Connecticut State Agencies, Sections 1-81-31 through 1-81-38, which restrict certain activities after leaving employment with the Department of Correction.

E. **Application of this Policy to All Department of Correction Employees.** The provisions of this directive shall apply to all employees of the Department of Correction. These provisions are deemed paramount in relation to all duties and responsibilities performed in an official capacity for the Department, inclusive of duties performed as a representative of the Department of Correction on any board or commission. All current and future employees of the Department shall become familiar with this directive. It is strongly suggested that employees avoid situations that are ethically questionable or that may give the appearance of being ethically questionable. An employee who has a question or who is unsure about the provisions of this policy shall be instructed to contact the Department of Correction's Ethics Liaison Officer to review areas of concern or the employee may contact the State Ethics Commission at:

> State Ethics Commission,
> 20 Trinity Street, Suite 205,
> Hartford, Connecticut 06106-1660
> Telephone: (860) 566-4472
> Fax: (860) 566-3806
> Website: www.ethics.state.ct.us

5. **Annual Review.** Each year, as part of the Department's policy review process, the policy on ethical conduct shall be examined. When warranted, recommendations for changes shall be made by a committee convened by the Commissioner for that purpose. The committee shall include line employees within the Department. The committee shall make its report to the Commissioner.

6. **Forms and Attachments.** The following forms and attachments are applicable to this Administrative Directive and shall be utilized for their intended function:

A. CN 11301, Gift Acknowledgment and Return Form.

7. **Exceptions.** Any exceptions to this Administrative Directive shall require prior written approval from the Commissioner.

| State of Connecticut<br>Department of Correction | Directive Number<br>2.17 | Effective Date<br>09/26/14 | Page 1 of 7 |
|---|---|---|---|
| **ADMINISTRATIVE<br>DIRECTIVE** | Supersedes<br>Employee Conduct dated 6/3/2013 | | |
| Approved By<br>*[signature]*<br>Interim Commissioner Scott Semple | Title<br>Employee Conduct | | |

1. <u>Policy</u>. Each employee of the Department of Correction shall engage in appropriate and ethical conduct while carrying out official duties and while engaged in off duty activities which directly reflect on the Department.

2. <u>Authority and Reference</u>.

   A. Public law 108-79. Prison Rape Elimination Act of 2003.
   B. 28 C.F.R. 115, Prison Rape Elimination Act National Standards.
   C. United States Code, 5 USC 1501 through 1508 (Hatch Act).
   D. Connecticut General Statutes, Sections 1-79 through 1-80, 1-81 through 1-86, 1-86e through 1-89, 5-266a through 5-268, 18-81,21a-267(d) 53a-65, 53a-71, 53a-73a, 53a-174 and 53a-174b.
   E. Public Act 11-71, An Act Concerning the Penalty for Certain Non-Violent Drug Offenses.
   F. Administrative Directives 1.10, Investigations; 1.12, Employee Legal Counsel/Representation; 1.13, Code of Ethics; 2.1, Equal Employment Opportunity and Affirmative Action; 2.2, Sexual Harassment; 2.6, Employee Discipline; 2.11, Employee Dependability; 6.12 Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention; 9.6, Inmate Administrative Remedies; and 10.7, Inmate Communications.
   G. American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-1A-29, 2-CO-1C-01, 2-CO-1C-04, 2-CO-1C-11 and 2-CO-1C-20.
   H. American Correctional Association, Standards for Adult Correctional Institution, Fourth Edition, January 2003, Standards 4-4024, 4-4048, 4-4056, 4-4063 and 4-4069.
   I. American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-7E-21, 4-ALDF-7C-01 and 4-ALDF-7C-02.
   J. American Correctional Association, Standards for Adult for Probation and Parole Field Services, Third Edition, August 1998, Standards 3-3032, 3-3047, 3-3053, 3-3060 and 3-3068.
   K. American Correctional Association, Standards for Correctional Training Academies, First Edition, May 1993, Standards 1-CTA-1C-01, 1-CTA-1C-07, 1-CTA-1C-12 and 1-CTA-1C-14.

3. <u>Definitions and Acronyms</u>. For the purposes stated herein, the following definitions and acronyms apply:

   A. <u>CD</u>. Compact Disc.
   B. <u>DOC</u>. Department of Correction.
   C. <u>DVD</u>. Digital Video Disc.
   D. <u>Electronic Devices</u>. Any personal electronic wireless communication device to include but not limited to a cell phone, pager, blackberry, or personal digital assistant (PDA).
   E. <u>Immediate Family Member</u>. A spouse, parent or step parent, child or stepchild, grandparent or step grandparent, sibling or stepsibling, grandchild or step grandchild, or cohabitant.
   F. <u>Inmate</u>. An individual under the supervision of the Department of Correction, or having any continuing sentence under the Department's supervision including but not limited to parole or community supervision.

| Directive Number 2.17 | Effective Date 09/26/14 | Page 2 of 7 |
|---|---|---|
| Title | Employee Conduct | |

G.    <u>MP3</u>. An audio format for consumer audio storage and playback of music on digital audio players.

H.    <u>PDA</u>. Personal Digital Assistant.

I.    <u>PREA</u>. Prison Rape Elimination Act.

J.    <u>Sexual Abuse</u>. For the purposes of this directive, Sexual Abuse shall be defined in accordance with Section 3 of A.D. 6.12 Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention.

4.    <u>Employee Responsibility</u>. Each employee of the Department shall act in a professional, ethical and responsible manner. Each employee shall become familiar with the tables of organization depicting the Department and Unit chains of command. Each employee shall show respect to any ranking member of the Department and shall obey any lawful order of a supervisor. An employee given an instruction or order which conflicts with a previous instruction or order shall inform the present supervisor of the conflict and follow the order as directed. Questions regarding any of the provisions contained in this Directive shall be directed to the employee's Unit Administrator or designee.

5.    <u>Standards of Conduct</u>.

    A.    Each employee shall:

        1.    Maintain compliance with all PREA Standards.

        2.    Comply with all federal and state statutes and regulations, administrative and unit directives, department and unit policies and procedures, post orders and lawful orders/instructions.

        3.    Enforce all rules, regulations and policies of the Department as appropriate.

        4.    Ensure that a safe, secure and sanitary work environment is maintained.

        5.    Remain alert, aware of, and responsive to the surroundings at all times.

        6.    Remain on assigned post until properly relieved and/or remain at worksite as required. No employee shall be authorized to leave facility grounds without authorization from a supervisor.

        7.    Comply with official notices and roll call and other instructions.

        8.    Meet all employee responsibilities for dependability.

        9.    Report any arrest or receipt of any criminal summons, any charge of infraction of C.G.S. 21a-267(d) (Prohibited Acts re: Drug Paraphernalia) and/or any protective or restraining order received from a law enforcement agency or court, to an appropriate supervisor prior to returning to work or within 48 hours (whichever occurs first). Such violations are subject to investigation in accordance with A.D. 1.10. This requirement shall not apply to summons received for minor traffic violations. An employee shall submit supporting documentation of arrest, or receipt of summons. Employees who have been arrested must inform their supervisor of the disposition of their charges within 48 hours of a disposition being reached (to include, but not limited to, convictions, dismissal of charges, nolles, accelerated rehabilitation, probation, suspended sentences, continued without finding, payment of fines, and special terms and conditions of the court). The employee must also submit supporting documentation of the disposition within 48 hours after disposition. Any employee on extended leave shall report any arrest or receipt of summons,

| Directive Number 2.17 | Effective Date 09/26/14 | Page 3 of 7 |
|---|---|---|
| Title | Employee Conduct | |

and subsequent disposition, to the Unit Administrator within 48 hours.

10. Report the receipt of any civil summons that impacts employment (e.g., named as a defendant in an employee or inmate lawsuit, restraining order, capias, contempt of court, etc.) associated with the employee's duties to an appropriate supervisor on or by the next scheduled work day, but no later than 48 hours after receipt of the summons.

11. Provide the Office of the Attorney General with relevant documents, subpoenas or other materials related to legal action with which they are involved in accordance with Administrative Directive 1.12, Employee Legal Counsel/Representation. Staff shall cooperate in all inquiries, depositions, interrogatories, or other legal processes that will assist the Legal Affairs Office and/or the Office of the Attorney General.

12. Inform the appropriate supervisor and the Human Resources Unit, in writing, of any change of address and/or telephone number within 48 hours.

13. Report to an appropriate supervisor any condition or use of medication the employee is taking, that may affect job performance or judgment.

14. Report any medication brought into the worksite and maintain any personal property and medication in a secure manner.

15. Act in a professional manner showing respect to other employees and the public.

16. Respect and protect the rights of inmates.

17. Maintain good stewardship of all state property and equipment.

18. Maintain appropriate demeanor at all times.

19. Be courteous and accommodating in all dealings with the public, to include telephone etiquette.

20. Report, in writing, to a supervisor when a friend or relative is or becomes incarcerated in any Connecticut DOC facility within 48 hours of discovery.

21. Cooperate fully and truthfully in any inquiry or investigation conducted by the Department of Correction and/or any law enforcement, regulatory or state agency.

22. Appropriately file information as required by the State Ethics Commission in accordance with Administrative Directive 1.13, Code of Ethics.

23. Promptly report to a supervisor any threat, harassment, physical or verbal abuse, assault, or act of intimidation. Incidents of discrimination or sexual harassment shall be reported in accordance with Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action and 2.2, Sexual Harassment.

24. An employee must receive written authorization from his/her Unit Administrator and the Unit Administrator housing the incarcerated family member in order to visit, phone or correspond with such family member.

B. The following behavior shall be strictly prohibited:

1. Any act that jeopardizes the security of the unit, health, safety, or welfare of the public, employees or inmates.

2. Excessive or unnecessary use of force.

3. Unauthorized possession of non-department issued firearms or other weapon while on duty or state property.

4. Conveyance or possession of unauthorized items within, into or out of a facility, or other correctional unit.

5. Neglect of duty or failure to supervise.

| Directive Number 2.17 | Effective Date 09/26/14 | Page 4 of 7 |
| --- | --- | --- |
| Title | Employee Conduct | |

6. Sleeping or inattentiveness while on duty.
7. Possessing unauthorized items while on duty (e.g., reading materials, personal electronic devices, etc.).
8. Abuse of sick time, accrued leave or workers' compensation.
9. Reporting to work in an impaired condition as a result of the use of alcohol, an illegal drug, or any medication. Employees shall not consume alcohol while on duty or in uniform.
10. Entering a correctional unit when off duty unless previously authorized.
11. Engaging in abusive, obscene, threatening, intimidating language or behavior.
12. Engaging in unprofessional or illegal behavior, both on and off duty that could reflect negatively on the Department of Correction or conflict with the Department's mission, to include association or membership with security risk groups, criminal enterprises, hate groups, or groups of high interest to law enforcement. It shall be the employee's responsibility to seek written clarification from the Unit Administrator regarding such association or membership.
13. Engaging in any activity, which would conflict with the proper discharge of or impair the independence of judgment in the performance of duty.
14. Engaging in bartering, gambling or games of chance with inmates.
15. Engaging in retaliation or reprisal (to include coercion or threatening behavior) against an inmate for participating in activities that are protected by law or directive. Such protected activities include, but are not limited to:

   a. filing an appeal, grievance or property claim in accordance with Administrative Directive 9.6, Inmate Administrative Remedies;
   b. accessing courts; and,
   c. engaging in privileged correspondence in accordance with Administrative Directive 10.7, Inmate Communications.

16. Engaging in undue familiarity with inmates which includes, but shall not be limited to, the following:

   a. any sexual contact between an employee and an inmate and/or person under the Department's supervision, or continuing sentence under the Department's supervision including but not limited to parole or community supervision;
   b. sexualizing a situation without physical touching such as partaking in activities involving suggestive or pornographic photographs, suggestive or explicit letters or behavior which provides sexual gratification;
   c. personal involvement in an inmate's private or family matters outside assigned professional duties;
   d. performing personal favors for inmates outside assigned professional duties;
   e. discussing with an inmate any matter pertaining to the inmate's crime(s) or the crime(s) of other inmates (except as required pursuant to official business);
   f. discussing with an inmate personal and/or business matters of employees;
   g. discussing security operations of a facility with an inmate;

| Directive Number 2.17 | Effective Date 09/26/14 | Page 5 of 7 |
|---|---|---|
| Title | Employee Conduct | |

    h.    inconsistently enforcing facility rules to favor an inmate or group of inmates over other inmates or groups of inmates;

    i.    having personal work done by an inmate;

    j.    visiting, corresponding with or accepting telephone calls, personal notes or letters from an inmate who is under the custody of the Department (except for an immediate family member AND only when authorized in writing by the employee's Unit Administrator and the Unit Administrator of the facility where the immediate family member is incarcerated);

    k.    housing an inmate who is under the custody of the Department (to include an inmate on community supervision), at the employee's home (except for an immediate family member AND when authorized in writing by the employee's Unit Administrator and the Director of Parole and Community Services);

    l.    entering into a personal or business agreement with an inmate, including, but not limited, to acting as a bail bondsman for an inmate or providing the resources for the inmate to bond out without prior notification to the Unit Administrator; and,

    m.    Transporting an inmate to an unauthorized location.

17.    Engaging in behavior which is sexually, emotionally, or physically abusive or harassing toward the public, employees or inmates.

18.    Unauthorized appropriation or use of any property belonging to the public, state or an inmate for personal, political or union purposes (i.e., computers, electronic mail, Department letterhead, etc.).

19.    Release of any confidential information or unauthorized or inaccurate release of information, records, or documents.

20.    Falsification, unauthorized alteration, or destruction of documents, log books, and other records, including job applications.

21.    Use of official position, uniform, identification or badge to gain any personal advantage or an advantage for another in any improper or unauthorized manner.

22.    Engaging in conduct that constitutes, or gives rise to, the appearance of a conflict of interest.

23.    Unauthorized acceptance of any item or service for oneself or family members, including but not limited to, a gift, loan, political contribution, reward or promise of future employment as outlined in Administrative Directive 1.13, Code of Ethics.

24.    Engage in any political activities that conflict with state and federal laws to include the Hatch Act.

25.    Failure to follow a lawful order.

26.    Engaging in insubordination.

27.    Failure to cooperate with a Department investigation.

28.    Lying or giving false testimony during the course of a Department investigation.

29.    Intentionally withholding information necessary for the completion of an investigation.

30.    Failure to properly conduct tours and/or inmate counts.

31.    Engaging in behavior to include lying or spreading false rumors that purposely defame the character of an employee, the public or the Department.

| Directive Number 2.17 | Effective Date 09/26/14 | Page 6 of 7 |
|---|---|---|
| Title | Employee Conduct | |

32. Engaging in any behavior or activity prohibited by Administrative Directives 2.1, Equal Employment Opportunity and Affirmative Action and 2.2, Sexual Harassment.

33. Engaging in retaliation, coercion, intimidation, harassment, threats or discrimination against any employee.

34. Conveying or possessing the following in a correctional facility unless authorized in writing by the Unit Administrator or higher authority:

   a.  any personal electronic wireless communication device (to include, but not limited to, a cellphone, pager, blackberry device, personal digital assistant (PDA));

   b.  any audio recording or playback device (to include, but not limited to, a radio, tape/CD player, ipod or MP3 player); or,

   c.  any photographic/video recording or playback device (to include, but not limited to, a television, DVD player, ipod, MP3 player, or electronic/video game).

6. **Staff Discipline** In accordance with Administrative Directive 2.6 staff shall be subject to disciplinary sanctions up to and including termination for violating agency inmate sexual abuse or harassment policies. Termination is the presumptive disciplinary sanction for staff that have been found to have engaged in sexual abuse.  All terminations for violations of agency inmate sexual abuse or harassment policies or resignations by staff who would have been terminated but for their resignation shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to any relevant licensing bodies.

7. **Supervision of Family Members.** An employee shall not be employed in any position that places the employee above or under the chain of command or possible supervision of any immediate family member as defined in Section 3(A), nor shall the employee be placed above or under the chain of command or possible supervision of any immediate family member of the employee's spouse or cohabitant. Such relationships must be reported by the family member of higher rank, in writing, to the Unit Administrator.

A relationship between family members who are not immediate family as defined in Section 3(A) of this Directive may preclude placement of an employee in a chain of command. Such relationships shall be evaluated by the appropriate Division Head on a case by case basis.

8. **Staff Relationships.**

   A.  **Supervisor/Employee Relationships.** Any supervisor or manager who becomes romantically or intimately involved with a Department employee in the chain of command must report such relationship so that the Department can take appropriate actions to ensure assignments do not result in a conflict of interest or possible supervision. The supervisor or manager involved in the relationship must report such relationship, in writing, to the Unit Administrator. Failure to do so shall result in discipline.

   B.  **Employee/Employee Relationships.** Employees who become romantically or intimately involved with one another shall be required to maintain a professional demeanor while on duty or on state property. It shall be the employees' responsibility to ensure said relationship does not affect their ability to carry out the duties and responsibilities of their respective positions.

   C.  **Outside Business Relationships.** An employee who owns or runs an outside business shall be prohibited from employing any supervisor or

| Directive Number | Effective Date | Page 7 of 7 |
|---|---|---|
| 2.17 | 09/26/14 | |
| Title | | |
| Employee Conduct | | |

subordinate in his/her chain-of-command. Conversely, an employee shall be prohibited from working for any supervisor or subordinate in his/her chain-of-command who owns or runs an outside business.

9.  Reporting Policy and/or Conduct Violations. Each employee shall report to a supervisor or appropriate personnel any policy violation or breach of professional conduct involving the public, employees or inmates under the jurisdiction of the Department of Correction.

10. Exceptions. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

|  State of Connecticut Department of Correction **ADMINISTRATIVE DIRECTIVE** | Directive Number 6.12 | Effective Date 7/20/15 | Page 1 of 19 |
|---|---|---|---|
| | Supersedes ¹Sexual Assault Prevention Policy, dated 11/02/2014 | | |
| Approved By ⟨signature⟩ Commissioner Scott Semple | Title    Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | | |

1. <u>Policy</u>. The Department of Correction shall maintain a zero tolerance policy on inmate sexual abuse/ sexual harassment. All employees, inmates, contractors, volunteers, vendors and visitors shall be subject to this zero tolerance policy. Violations of the policy may result in administrative and/or criminal sanctions. Each facility shall establish procedures for inmate sexual abuse/ sexual harassment prevention and intervention.

2. <u>Authority and Reference</u>.

   A. Public Law 108-79, Prison Rape Elimination Act of 2003.
   B. 28 C.F.R. 115, Prison Rape Elimination Act National Standards.
   C. Connecticut General Statutes, Sections 18-81, 18-81cc 53a-70, 53a-71, 53a-71a, 53a-72a and 53a-73a.
   D. Administrative Directives 1.6, Monthly and Annual Reports; 1.10, Investigations;2.3, Employee Selection, Transfer and Promotion; 2.6 Employee Discipline; 2.7, Training and Staff Development; 2.15, Custodial Staff Deployment; 2.17, Employee Conduct; 2.24, Employee Arrests, Restraining Orders and Criminal Summons; 3.13, Contracts Administration;4.7, Records Retention; 5.1, Projects, Capital Projects, Leases; 6.1, Tours and Inspections; 6.6, Reporting of Incidents; 6.9, Control of Contraband and Physical Evidence; 8.1, Scope of Health Services Care;8.5, Mental Health Services; 9.2, Offender Classification; 9.3, Admissions, Transfers and Discharges; 9.5 Code of Penal Discipline; 9.9, Protective Management; 10.4, Volunteer and Recreation Services; 10.8 Religious Services; 10.12, Inmate Orientation; 10.19, Americans with Disabilities Act.
   E. University of Connecticut Health Center, Correctional Managed Health Care, Policy B 5.01, Sexual Contact/Assault.
   F. American Correctional Association, Standards for Adult Correctional Institutions, Fourth Edition, January 2003, Standards 4-4281-1 through 4-4281-8 and 4-4406.
   G. American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-2A-29, 4-ALDF-4D-22, 4-ALDF-4D-22-1 through 4-ALDF-4D-22-8 and 4-ALDF-7B-10.
   H. National Commission on Correctional Health Care, Prison Health Standards, 2003, Standard P-G-09.
   I. Parole and Community Services Policy & Procedure Manual.

3. <u>Definitions and Acronyms</u>. For the purposes stated herein, the following definitions and acronyms apply:

   A. <u>Agency PREA Coordinator</u>. A person appointed by the Commissioner of Correction or his/her designee shall serve as the agency PREA Coordinator for the Connecticut Department of Correction.
   B. <u>Abusive Sexual Contact</u>.  Contact of any person without his or her consent, or of a person who is unable to consent or refuse AND the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person, without his or her consent, or of a person who is unable to

| Directive Number | Effective Date | Page 2 of 19 |
|---|---|---|
| 6.12 | 7/20/15 | |

| Title | |
|---|---|
| | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention |

consent or refuse; excluding incidents in which the intent of the contact is to harm or debilitate rather than to sexually exploit. Abusive sexual contact shall also include any unwanted and/or forced kissing and hugging.

C. **Community Supervision.** The supervision and management of inmates in the community. Such supervision includes but is not limited to locations outside of a correctional facility where they are required to reside as part of a term of imprisonment or as a condition of release prior to end of sentence.

D. **Exigent Circumstances.** Any set of temporary and unforeseen circumstances that require immediate action in order to combat a threat to the security or institutional order of a facility.

E. **Facility PREA Compliance Manager.** A supervisory employee assigned by the Unit Administrator or his/her designee shall serve as the Facility PREA Compliance Manager at each facility.

F. **HIV.** Human Immunodeficiency Virus

G. **Intersex.** A person whose sexual or reproductive anatomy or chromosomal pattern does not seem to fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as disorders of sex development.

H. **Nonconsensual Sexual Act.** Contact of any person without his or her consent, or of a person who is unable to consent or refuse AND one of the following: (1) contact between the penis and the vagina or the penis and the anus including penetration, however slight; or (2) contact between the mouth and the penis, vagina, or anus; or (3) penetration of the anal or genital opening of another person by a hand, finger, or other object.

I. **PREA.** Prison Rape Elimination Act.

J. **Preponderance of Evidence.** Proof by information that, compared with information opposing it, leads to the conclusion that the fact at issue is more probably true than not.

K. **Separation Profile.** A record specifying the need and reason for keeping two (2) or more individuals apart from each other.

L. **Sexual Abuse.** For the purposes of this Directive, sexual abuse shall be defined as the following conduct between persons regardless of gender. There are two categories of sexual abuse:

1) Sexual abuse of an inmate by another inmate includes any of the following acts, if the victim does not consent, is coerced into such act by overt or implied threats of violence, or is unable to consent or refuse:
   (a) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;
   (b) Contact between the mouth and the penis, vulva, or anus;
   (c) Penetration of the anal or genital opening of another person, however slight, by a hand, finger, object, or other instrument; and:
   (d) Any other intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or the buttocks of another person, excluding contact incidental to physical altercation.

2) Sexual abuse of an inmate by a staff member, vendor, contractor, or volunteer includes any of the following acts, with or without consent of the inmate:
   (a) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;
   (b) Contact between the mouth and the penis, vulva, or anus;
   (c) Contact between the mouth and any body part where the staff member, contractor, vendor or volunteer has the intent to abuse,

| Directive Number 6.12 | Effective Date 7/20/15 | Page 3 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

        arouse, or gratify sexual desire;

  (d) Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

  (e) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

  (f) Any attempt, threat, or request by a staff member, contractor, vendor or volunteer to engage in the activities described in paragraphs (a) through (e) of this section;

  (g) Any display by a staff member, contractor, vendor or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, and;

  (h) Voyeurism by a staff member, contractor, vendor or volunteer.

M. **Sexual Harassment**. Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, directed toward another; and repeated verbal comments or gestures of a sexual nature to an inmate, by a staff member, contractor, vendor or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

N. **STARS**. Statistical Tracking Analysis Reporting System.

O. **Substantiated Allegation**. An allegation that was investigated and determined based upon the preponderance of the evidence to have occurred.

P. **Transgender**. A person whose gender identity (*i.e.*, internal sense of feeling male or female) is different from the person's assigned sex at birth.

Q. **Unfounded Allegation**. An allegation that was investigated and determined based on the preponderance of the evidence to not have occurred.

R. **Unsubstantiated Allegation**. An allegation that was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred.

S. **Voyeurism**. An invasion of privacy of an inmate by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions.

4. **Staffing Plan**. The agency PREA Coordinator shall assist in the development and documentation of a staffing plan that provides for adequate levels of staffing in all facilities, and, where applicable, video monitoring to protect inmates against sexual abuse. Each facility must document and justify all deviations from the staffing plan. Whenever necessary, but at least once a year for each facility, the agency PREA Coordinator shall, in consultation with others in the agency, assess, determine and document whether adjustments are needed to the staffing plan, video and other monitoring technology, and the resources the facility has available to adhere to the staffing plan.

| Directive Number 6.12 | Effective Date 7/20/15 | Page 4 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

5.   Community Confinement. Any contract entered into by the Department of Correction with a private entity that provides for the housing of residents in the community must include a requirement that the private entity adopt and comply with PREA standards and shall provide for monitoring by the Department to ensure the private entity's compliance with PREA standards.   Only in emergency circumstances in which all reasonable attempts to find a private entity in compliance with PREA standards have failed may the Department contract with a private entity that fails to comply with PREA standards.   In such a case, the unsuccessful attempts to find a private entity in compliance with PREA standards must be documented.

6.   Staff Selection

    A.   Hiring New Staff. The Department of Correction shall not hire anyone who may have contact with inmates who is known to the Department of Correction to have:

       1.   Engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, institution housing persons who are mentally ill or disabled or retarded or chronically ill or handicapped, or institution providing skilled nursing or intermediate or long-term care or custodial or residential care;

       2.   Been convicted of engaging in or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse; or

       3.   Was civilly or administratively adjudicated to have engaged in the activity described in subsection (2) of this section.

    The Department of Correction shall consider any known incidents of sexual abuse/harassment in determining whether to hire anyone who may have contact with inmates.

    Before hiring new employees who may have contact with inmates, the Department of Correction shall:

       1.   Perform a criminal background check; and

       2.   Consistent with Federal, State and local law, make its best efforts to contact all prior institutional employers for information on substantiated allegations of resident or detainee sexual abuse/harassment or any resignation pending an investigation of such allegations.

       3.   Ask the applicant in a written application or interview directly about whether they have been found to have engaged in sexual abuse/ harassment in a prison, jail, lockup, community confinement facility, juvenile facility, institution housing persons who are mentally ill or disabled or retarded or chronically ill or handicapped, or institution providing skilled nursing or intermediate or long-term care or custodial or residential care.  Material omissions regarding such misconduct, or the provision of materially false information regarding such misconduct may be grounds for termination.

    B.   Continuing Duty to Disclose.  Any current or newly hired staff member has a continuing duty to disclose any finding that they have engaged in sexual abuse/ harassment in a prison, jail, lockup, community confinement facility, juvenile facility, institution

| Directive Number 6.12 | Effective Date 7/20/15 | Page 5 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

housing persons who are mentally ill or disabled or retarded or chronically ill or handicapped, or institution providing skilled nursing or intermediate or long-term care or custodial or residential care. Material omissions regarding such misconduct, or the provision of materially false information regarding such misconduct may be grounds for termination. Staff are also subject to the reporting requirements of Administrative Directives 2.17 and 2.24 with respect to arrests, restraining orders and criminal summons. The Department of Correction shall also perform a criminal background records check at least every five years of current employees.

7.  **Staff Promotion.** The Department of Correction shall not promote any employee who may have contact with inmates who is known to the Department of Correction to have:

A.  Engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, institution housing persons who are mentally ill or disabled or retarded or chronically ill or handicapped, or institution providing skilled nursing or intermediate or long-term care or custodial or residential care;

B.  Been convicted of engaging in or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse; or

C.  Was civilly or administratively adjudicated to have engaged in the activity described in this section.

D.  The Department of Correction shall consider any incidents of inmate sexual harassment in determining whether to promote anyone who may have contact with inmates. In addition, the Department of Correction shall ask the candidate for promotion in a written application or interview directly about whether they have been found to have engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, institution housing persons who are mentally ill or disabled or retarded or chronically ill or handicapped, or institution providing skilled nursing or intermediate or long-term care or custodial or residential care. Material omissions regarding such misconduct or the provision of materially false information regarding such misconduct may be grounds for termination.

8.  **Selecting Contractors, Vendors and Volunteers.** The Department of Correction shall not enlist the services of any contractor, vendor or volunteer who may have contact with inmates who is known to the Department of Correction to have:

A.  Engaged in sexual abuse/harassment in a prison, jail, lockup, community confinement facility, juvenile facility, institution housing persons who are mentally ill or disabled or retarded or chronically ill or handicapped, or institution providing skilled nursing or intermediate or long-term care or custodial or residential care;

B.  Been convicted of engaging in or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse; or

C.  Was civilly or administratively adjudicated to have engaged in the activity described in this section.

D.  The Department of Correction shall consider any known incidents of inmate sexual abuse/harassment in determining whether to enlist

| Directive Number | Effective Date | Page 6 of 19 |
|---|---|---|
| 6.12 | 7/20/15 | |
| Title | | |
| Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | | |

the services of any contractor, vendor or volunteer who may have contact with inmates.

Before enlisting the services of any contractor, vendor or volunteer who may have contact with inmates, the Department of Correction shall perform a criminal background check, which shall be repeated every five years (if necessary).

9.  **Staff Training**

A.  **Pre-Service Orientation Training.** Newly hired staff with direct inmate contact shall receive training on inmate sexual abuse/ sexual harassment prevention prior to being assigned to a facility. Staff shall be trained regarding:

(1) Its zero-tolerance policy for inmate sexual abuse and sexual harassment;
(2) How to fulfill their responsibilities under agency inmate sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures;
(3) Inmates' right to be free from sexual abuse and sexual harassment;
(4) The right of inmates and employees to be free from retaliation for reporting sexual abuse and sexual harassment;
(5) The dynamics of sexual abuse and sexual harassment in a confinement setting;
(6) The common reactions of sexual abuse and sexual harassment victims;
(7) How to detect and respond to signs of threatened and actual sexual abuse;
(8) How to avoid inappropriate relationships with inmates;
(9) How to communicate effectively and professionally with all inmates, including lesbian, gay, bisexual, transgender, intersex or gender non-conforming inmates;
(10) How to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities; and
(11) Any concerns specific to the gender of the inmates at the employee's assigned facility.

The agency shall document, through employee signature or electronic verification that employees understand the training they have received.

B.  **In-Service Training.** Staff with direct inmate contact shall receive refresher training on sexual abuse/ sexual harassment prevention, intervention and follow-up procedures annually. Such training shall be tailored to the gender of the inmates at the employee's facility so that the employee receives training specific to the gender he or she supervises, even if the employee has previously worked in a facility with inmates of a different gender.  The Department of Correction shall document, through employee signature or electronic verification that employees understand the training they have received.
Investigators and Health Practitioners shall receive additional training specific to their areas of responsibility.
All contractors and volunteers who have contact with inmates must be trained on their responsibilities under the agency's sexual abuse prevention and intervention policy.  The level and type of training provided to volunteers, vendors and contractors shall be based on

| Directive Number 6.12 | Effective Date 7/20/15 | Page 7 of 19 |
|---|---|---|
| Title | | |
| Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | | |

the services they provide and the level of contact they have with inmates, but all volunteers, vendors and contractors who have contact with inmates shall be notified of the agency's zero tolerance policy for inmate sexual abuse and harassment and informed on how to report any incidents.  The agency shall maintain documentation confirming that volunteers, vendors and contractors understand the training they received.

C.   Roll Call Notices. Each facility shall update staff as needed via roll call notices as directed by the Unit Administrator in consultation with the Agency PREA Coordinator.

10.   Inmate Education. During intake processing each inmate shall receive orientation that includes a presentation of the PREA video titled "PREA- What you need to know" in accordance with Administrative Directive 10.12, Inmate Orientation. Each inmate shall sign the designated form acknowledging receipt of such materials which shall be maintained in the inmate's Master File. Inmates assigned to a restrictive status or inmates whose status and/or behavior preclude them from attending group orientation sessions shall receive a "Sexual Abuse/ Sexual Harassment Prevention for Inmates" handout as well as the Inmate Handbook with information regarding the Prison Rape Elimination Act and personal safety. During orientation, inmates shall be made aware of DOC's zero tolerance policy for Inmate Sexual Abuse and Sexual Harassment and at least two internal methods of reporting sexual abuse/ sexual harassment and one method of reporting sexual abuse to an external entity that is not part of the Department of Correction. Third party and anonymous reporting must be allowed. Additionally, inmates shall be provided with contact information for victim advocacy groups that provide services to victims of sexual abuse. Inmates with disabilities that prevent them from being able to access the materials in the format(s) in which they are regularly provided shall be accommodated in a way appropriate to their disability in accordance with Administrative Directive 10.19 American with Disabilities Act.

11.   Screening for Risk of Victimization and Abusiveness.

A.   On Intake to the Facility. During intake as a direct admit, inmates shall be screened by qualified staff members using A.D. 9.3, Attachment- B Intake Health Screening (HR 001) form and CN 9306 Inmate Intake Form. During inter-facility transfer, inmates shall be screened by qualified staff members using A.D. 9.3, Attachment- I Transfer Summary (HR 005) form and CN 9306/2 Inmate Intake Form. Screening shall incorporate the use of best practices in making a determination of the inmate's risk of being  sexually abused by other inmates or sexually abusive towards other inmates.
This screening shall ordinarily take place upon intake processing, unless exigent circumstances exist, then not later than 72 hours of arrival at the facility. The intake screening shall consider, at minimum, the following criteria to assess inmates for risk of sexual victimization or abusiveness:

- Whether the inmate has a mental, physical, or developmental disability;
- The age of the inmate;
- The physical build of the inmate;
- Whether the inmate has previously been incarcerated;
- Whether the inmate's criminal history is exclusively nonviolent;

| Directive Number 6.12 | Effective Date 7/20/15 | Page 8 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

- Whether the inmate has prior convictions for sex offenses against an adult or child;
- Whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming;
- Whether the inmate has previously experienced sexual victimization;
- Whether the inmate has previously engaged in sexual abusiveness towards another person;
- The inmate's own perception of vulnerability, and
- Whether the inmate is detained solely for civil immigration purposes.

Inmates may not be subject to disciplinary action for refusing to Answer or failing to disclose information during the screening Process related to the following subjects:

- Having a physical, mental or developmental disability;
- Being perceived as gay, lesbian, bisexual, transgender, intersex or gender non-conforming;
- Being a victim of prior sexual victimization; and,
- Perception of their own vulnerability.

1) Inmates at high risk for sexual victimization shall not be placed involuntarily in restrictive housing unless an assessment of all available housing alternatives has been made and a determination has been made that there is no available alternative housing means of separation from likely abusers.  If the facility cannot perform such an alternative housing assessment immediately, the facility may hold the inmate involuntarily in restrictive housing on Administrative Detention status per A.D. 9.4 Restrictive Status for less than 24 hours while completing the alternative housing assessment.

2) Inmates placed in restrictive housing for this purpose shall have access to programs, privileges, education or work opportunities to the extent possible.  If the facility restricts access to programs, privileges, education, or work opportunities, the facility shall document: (1) the opportunities that have been limited; (2) the duration of the limitation; and (3) the reasons for such limitations.

3) The facility shall assign such inmates to involuntary restrictive housing on Administrative Detention status only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days.  If an involuntary restrictive housing assignment is made, the facility shall document: (1) the basis for the facility's concern for the inmate's safety; and (2) the reason why no alternative means of separation can be arranged.  Every 30 days, the facility shall review the circumstances to determine whether there is a continuing need for separation from the general population.

B.   After Intake to the Facility. Within 30 days from the inmate's arrival at the facility, qualified staff must reassess the inmate's risk of victimization or abusiveness with documentation on the inmate classification history form, based on any additional, relevant information received by the facility since the initial intake screening. An inmate's risk of victimization or abusiveness shall also be reassessed when warranted due to a referral, request, incident of sexual abuse/harassment, or receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness.

| Directive Number | Effective Date | Page 9 of 19 |
|---|---|---|
| 6.12 | 7/20/15 | |
| Title | | |
| Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | | |

C. <u>Use of Screening Information</u>. The Department shall use screening information to enhance housing, bed, work, education and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive. The Department will make individualized determinations on how to ensure the safety of each inmate. Information obtained through screening shall be kept confidential and only shared to the extent that it is necessary to do so to inform treatment plans, security and management decisions (including housing, bed, work, education and program assignments) or as otherwise required by Federal, State or local law. Medical and mental health practitioners must obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under 18.

If screening indicates that an inmate has experienced prior sexual victimization or has previously perpetrated sexual abuse the inmate shall be offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening no matter where the sexual victimization or abuse occurred.

D. <u>Transgender and Intersex Inmates</u>.  In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the Department shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems. Placement and programming assignments for each transgender or intersex inmate shall be reassessed at least twice each year by the unit counselor to review any threats to safety experienced by the inmate. The results of the review shall be documented on the inmate classification history form in section 5 of the inmate master file. A transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration.  Transgender and intersex inmates shall be given the opportunity to shower separately from other inmates.  The Department shall not place lesbian, gay, bisexual, transgender, or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting such inmates.

E. <u>Showering and Bodily Functions</u>.  Inmates shall be permitted to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks.  Staff of the opposite gender must announce their presence when entering an inmate housing unit when no other staff of the opposite gender is present.

12. <u>Inmate and Third Party Reporting of Sexual Abuse and Sexual Harassment</u>.

A. <u>Inmate Reporting</u>.  The Department has multiple methods for inmates to privately report sexual abuse and sexual harassment, retaliation by other inmates or staff for reporting sexual abuse or harassment, and staff neglect or violation of responsibilities that may have

48

| Directive Number 6.12 | Effective Date 7/20/15 | Page 10 of 19 |
|---|---|---|
| Title | | |
| Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | | |

contributed to such incidents.

Inmates may report such incidents in the following ways:

1. Reporting to any staff member either verbally or in writing (verbal reports must be documented promptly);
2. Calling the PREA hotline;
3. Writing an inmate request;
4. Writing an anonymous note;
5. Calling the Connecticut State Police;
6. Inmates detained solely for civil immigration purposes may also contact any relevant consular officials and relevant officials at the United States Department of Homeland Security. Staff shall provide contact information to such inmates upon request.

In addition, staff shall, to the extent necessary, take steps to aid inmates with disabilities and non-English speakers to report such incidents. Staff use of inmate language interpreters shall normally be prohibited. Except in exigent circumstances where a delay in obtaining an effective non-inmate interpreter could jeopardize the safety or well being of any involved party. Delays which may significantly hinder the performance of an employee's duties of information gathering, reporting and/or assisting an alleged victim must be properly documented.

Inmates who file reports of sexual abuse and/or sexual harassment that are deemed to be false and unfounded after proper investigation may be subject to disciplinary action in accordance with Administrative Directive 9.5, Code of Penal Discipline and/or criminal charges according to applicable State laws.

B. Third Party Reporting. Staff shall accept reports of sexual abuse, sexual harassment, retaliation for reporting sexual abuse and harassment or staff neglect or violation of responsibilities from inmates not directly involved in the incident in question. Such inmates may report these incidents in any manner set forth above.

Inmates who file third party reports of sexual abuse and/or sexual harassment that are deemed to be false and unfounded after proper investigation may be subject to disciplinary action in accordance with Administrative Directive 9.5, Code of Penal Discipline and/or criminal charges according to applicable State laws.

Staff shall also accept such reports from individuals outside the correctional facility. These individuals may make reports by:

1. Writing to or calling the Commissioner, Deputy Commissioner, District Administrator or Unit Administrator of the facility in which the incident allegedly occurred;
2. Contacting the PREA Coordinator;

The Department shall make the above information about reports from third parties outside the correctional facility available on its website.

13. Staff Monitoring and Intervention (Sexual Abuse). Staff, volunteers, vendors and contractors shall treat any observation of sexual activity as potential sexual abuse. All staff, vendors, volunteers and contractors shall report any instance of suspected, alleged or actual sexual abuse, retaliation against staff or inmates for reporting sexual abuse, or staff neglect or violation of responsibilities contributing to sexual abuse to a

| Directive Number 6.12 | Effective Date 7/20/15 | Page 11 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

shift supervisor as soon as practical and provide documentation in accordance with Administrative Directive 6.6, Reporting of Incidents.

Supervisory staff on all shifts shall conduct random, unannounced tours throughout their area(s) of responsibility in accordance with Administrative Directive 6.1, Tours and Inspections. Staff shall not alert other staff to the fact that these tours are occurring, unless doing so is related to legitimate operational concerns.  The use of video surveillance cameras shall be used to augment staff tours for increased observation. Each facility shall identify blind spots where sexual abuse is at higher risk of occurring and develop a strategy to compensate for such areas.

The following responsibilities apply to situations involving inmates housed in a Correctional facility:

A.  Staff Action.  If a staff member including medical staff, suspects, or an inmate or third party alleges that he/she or another inmate may have suffered from sexual abuse, the following actions shall be implemented:

1. Identify, separate and secure inmates involved, if necessary.
2. Identify the crime scene and maintain the integrity of the scene for evidence gathering.
3. Notify a shift supervisor of the incident as soon as practical.
4. Do not allow any inmates involved to shower, wash, drink, brush teeth, eat, defecate, urinate, or change clothes until examined if doing so could be reasonably expected to destroy biological, forensic or physical evidence related to such sexual abuse.
5. Promptly document incident on CN 6601, Incident Report and forward to a shift supervisor in accordance with Administrative Directive 6.6, Reporting of Incidents.
6. Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary to make treatment, investigation, and other security and management decisions.
   If the incident reported allegedly occurred in a facility that is not under the jurisdiction of the Department of Correction, or at a facility/ site under the jurisdiction of the Department of Correction other than where it is reported the Unit Administrator or designee shall notify the administrator of the other facility of the allegation within 72 hours of the reporting of the incident.

B.   Supervisory Action.  In addition to the requirements of Section 13(A) above, the supervisor shall:

1.    Contact the facility duty officer  as soon as practical.
2.    Alert health services staff as soon as practical. Escort the victim to the Health Services Unit for a private medical and mental health assessment as soon as possible.
3.    Take appropriate steps to ensure that the victim is not left alone.
4.    Offer or make arrangements for the victim to speak with the facility's religious service representative.
5.    Ensure timely access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment.
6.    Complete all necessary reports in accordance with this

| Directive Number 6.12 | Effective Date 7/20/15 | Page 12 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

Directive and Administrative Directive 6.6, Reporting of
Incidents.

7.  Complete CN 61201- PREA Incident Checklist.

8.  Forward the reports through the appropriate chain of command
for review and follow up investigation.

9.  Apart from reporting to designated supervisors or officials,
staff shall not reveal any information related to a sexual
abuse report to anyone other than to the extent necessary to
make treatment, investigation, and other security and
management decisions.

If the incident reported allegedly occurred in a facility that is
not under the jurisdiction of the Department of Correction, or at a
facility/ site under the jurisdiction of the Department of
Correction other than where it is reported, the Unit
Administrator or designee shall notify the administrator of the
other facility of the allegation within 72 hours of the reporting of
the incident.

C.  Medical Staff Action. The following actions shall be undertaken by
facility medical staff in response to a reported incident of sexual
abuse:

1.  The facility shall offer medical and mental health
evaluation and, as appropriate, treatment to all inmates who
have been victimized by sexual abuse in any facility.
(An inmate may refuse such treatment in writing utilizing
HR-301; Refusal of Health Services) any such refusal must be
documented by the Supervisor completing the PREA Incident
Checklist (CN61201).

2.  The evaluation and treatment of such victims shall include,
as appropriate, follow-up services, treatment plans, and,
when necessary, referrals for continued care following their
transfer to, or placement in, other facilities, or their
release from custody.

3.  Medical and mental health staff must inform the alleged
victim of their duty to report allegations of sexual abuse
and limitations of confidentiality regarding that topic at
the initiation of services.

4.  The facility shall provide such victims with medical and
mental health services consistent with the community level
of care.

5.  Inmate victims of sexually abusive vaginal penetration while
incarcerated shall be offered pregnancy tests and timely
information about and access to emergency contraception.

6.  Inmate victims of sexual abuse while incarcerated shall be
offered timely access to information about and access to
sexually transmitted infections prophylaxis and tests for
sexually transmitted infections all as medically
appropriate.

7.  Treatment services relative to sexual abuse shall be
provided to the victim without financial cost and regardless
of whether the victim names the abuser or cooperates with
any investigation arising out of the incident.

8.  All facilities shall attempt to conduct a mental health
evaluation of all known inmate-on-inmate aggressors
within 60 days of learning of such abuse history and offer
treatment when deemed appropriate by mental health
practitioners.

9.  If pregnancy results from the conduct described in this

| Directive Number 6.12 | Effective Date 7/20/15 | Page 13 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

directive, such victims shall receive timely and
comprehensive information about and timely access to all
lawful pregnancy-related medical services.

10.   If the inmate is under 18 or otherwise subject to any
mandatory reporting laws, report the incident to the
Department of Children and Families or relevant agency.

11.   Complete and submit all required documentation.

12.   Offer a forensic examination.

D.   Community Supervision Staff Action. If a Community Supervision
Staff suspects or an inmate alleges that he/she or another inmate
may have suffered from sexual abuse the following actions shall be
implemented:

1. Notify immediate supervisor as soon as practical.
2. Notify appropriate law enforcement agency and parole staff.
3. Identify the crime scene and attempt to maintain the integrity of
the scene for possible evidence gathering (If practical).
4. Complete all required documentation.
5. Ensure that inmate receives appropriate medical care (If
circumstances dictate).

14.   Staff Monitoring and Intervention (Sexual Harassment). All staff,
volunteers, vendors and contractors shall report any instance of
suspected, alleged or actual sexual harassment, retaliation against staff
or inmates for reporting sexual harassment, or staff neglect or violation
of responsibilities contributing to sexual harassment to a shift
supervisor as soon as practical and provide documentation in accordance
with Administrative Directive 6.6, Reporting of Incidents.
The following responsibilities apply to situations in a Correctional
Facility:

A.   Staff Action. If a staff member suspects or an inmate or third party
alleges that he/she or another inmate may have suffered from sexual
harassment the following actions shall be implemented:

1.   Identify and separate inmates involved, if necessary.
2.   Notify a shift supervisor of the incident as soon as
practical.
3.   Document incident on CN 6601, Incident Report and forward to
a shift supervisor in accordance with Administrative
Directive 6.6, Reporting of Incidents.

B.   Supervisory Action. In addition to the requirements of Section
14(A) above, the supervisor shall:

1.   Notify the facility duty officer.
2.   Complete HR-501, Request for Mental Health Services.
3.   Complete all necessary reports in accordance with this
Directive and Administrative Directive 6.6, Reporting of
Incidents.
4.   Complete CN 61202-PREA Incident Checklist.
5.   Forward all documents through chain of command for
review/follow-up investigation.

| Directive Number | Effective Date | Page 14 of 19 |
|---|---|---|
| 6.12 | 7/20/15 | |
| Title | | |
| Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | | |

C. **Medical Staff Action.** The following actions shall be undertaken by facility medical staff in response to a reported incident of sexual harassment:

    1. The facility shall offer medical and mental health evaluation and, as appropriate, treatment to all inmates who have been victimized by sexual harassment in any facility.

D. **Community Supervision Staff Action.** If a Community Supervision Staff suspects or an inmate alleges that he/she or another inmate may have suffered from sexual harassment the following actions shall be implemented:

    1. Notify immediate supervisor as soon as practical.
    2. Complete all required documentation.
    3. Forward completed documentation through chain of command for follow-up investigation.

15. **Evidence Protocol/Securing the Area.** The area of any attempted or actual sexual abuse shall be treated as a possible crime scene in accordance with Administrative Directive 6.9, Control of Contraband and Physical Evidence. Once the inmate is removed from the area, care shall be taken not to disturb the suspected crime scene. Items shall not be cleansed or removed. Photos shall be taken of the suspected crime scene and any suspected physical evidence. Sketches and notes should be made of the location if items are/were removed. Only authorized personnel shall be allowed to enter the area. The collection of physical evidence shall be conducted by the Connecticut State Police or in instances when authorized by the Connecticut State Police, Department employees shall collect, secure and store physical evidence. If required, authorized and trained Department of Correction personnel shall collect evidence as follows:

    A. Latex or rubber gloves shall be worn while handling/ processing any evidence items.
    B. Each specific item of physical evidence shall be placed in a separate paper bag, envelope or container so as to avoid disturbing or compromising the integrity of the physical evidence.
    C. The storage container shall be tagged utilizing CN 6901, Contraband/Physical Evidence Tag and Chain of Custody.
    D. Physical evidence items when removed from the scene shall be placed in the physical evidence storage area or turned over to the Connecticut State Police.
    E. Once the Connecticut State Police have cleared the crime scene, the Unit Administrator or designee may issue the orders for the area to be cleaned and inventoried.

16. **Investigation of Sexual Abuse/ Sexual Harassment.** The Connecticut State Police shall serve as the primary investigating authority in all incidents of sexual abuse within the Department of Correction. When inmates are being housed within the community confinement centers with which the Department contracts, the appropriate law enforcement agency shall be the investigating authority. All such referrals to police shall be documented. The Department's PREA Investigation Unit shall assist the appropriate law enforcement agency as needed and shall conduct a separate internal investigation into the incident in accordance with Administrative Directive 1.10, Investigations. The PREA Investigation Unit or designee shall serve as the primary investigating authority for all incidents of sexual harassment. All PREA investigators shall complete specialized training in accordance with Administrative Directive 1.10.

| Directive Number 6.12 | Effective Date 7/20/15 | Page 15 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

In the event the appropriate law enforcement agency refuses to investigate a sexual abuse allegation, such refusal shall be documented on an Incident Report Form CN 6601 and the Unit Administrator immediately notified.

17.   Reporting to Inmates Making an Allegation of Sexual Abuse. Following an investigation into an inmate's allegation that he or she suffered sexual abuse in a facility, the PREA Unit shall inform the inmate when an allegation is found to be substantiated. If the investigation was performed by the State Police and not the PREA Unit, the PREA Unit shall request the relevant information from the State Police in order to inform the inmate.

A. Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, the facility shall subsequently inform the inmate (unless the allegation has been determined to be unfounded or unsubstantiated ) whenever:
(1) the staff member is no longer in the inmate's housing unit;
(2) the staff member is no longer employed at the facility;
(3) the Department learns that the staff member has been arrested on a charge related to sexual abuse within the facility; or
(4) the Department learns that the staff member has been convicted on a charge related to sexual abuse within the facility.

B. Following an inmate's allegation that he or she has been sexually abused by another inmate, the Department shall inform the alleged victim whenever:
(1) the Department learns that the alleged abuser has been arrested on a charge related to sexual abuse in the facility; or
(2) the Department learns that the alleged abuser has been convicted on a charge related to sexual abuse within the facility.

All such notifications shall be documented on the CN 9202 Offender Classification History form in section 5 of the inmate's master file. The Department's obligation to report under this standard shall terminate if the alleged victim is released from the Department's custody.

18.   Post Allegation Protection of Inmates and Staff from Retaliation. No inmate or staff should be retaliated against for reporting inmate sexual abuse or inmate sexual harassment. For at least 90 days following a report of sexual abuse, the facility shall monitor the conduct and treatment of inmates or staff who reported the alleged sexual abuse and of inmates who were reported to have suffered sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff, and shall act promptly to remedy any such retaliation. Items the PREA Unit should monitor include any inmate disciplinary reports, housing, or program changes, or negative performance reviews or reassignments of staff. The PREA Unit should also include periodic status checks of any alleged inmate victims. The PREA Unit shall continue the monitoring beyond 90 days if the initial monitoring indicates a continuing need for monitoring. If any other individual who cooperates with the investigation expresses a fear of retaliation, the PREA Unit shall recommend appropriate actions (if any) to protect the individual against retaliation. The agencies PREA Director Unit's obligation to monitor shall terminate if an investigation determines that the allegation is unfounded.

| Directive Number 6.12 | Effective Date 7/20/15 | Page 16 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

19. **Classification**. Victims/alleged victims of sexual abuse and aggressors/alleged aggressors shall be identified and tracked. Inmates involved in sexual abuse shall be kept separate from each other by means of a separation profile utilizing CN 9902, Separation Profile Entry/Update/Deletion Request. The establishment or modification of a separation profile, to include updating the appropriate RT screen(s), shall be completed in accordance with Administrative Directive 9.2, Offender Classification.

Inmates who are perceived as sexual aggressors or potential sexual aggressors by the Unit Administrator/designee based on past and/or present sexual behavior, classification information, a clinical assessment conducted by a licensed healthcare provider or other verifiable information, shall be appropriately housed at the facility or may be transferred to another facility for the purposes of separation from victims and potential victims.

20. **Upgrades to Facilities and Technologies**. When designing or acquiring any new facility and in planning any substantial expansion or modification of existing facilities, the Department shall consider the effect of the design, acquisition, expansion, or modification upon the agency's ability to protect the inmates from sexual abuse. When installing or updating a video monitoring system, electronic surveillance system or other monitoring technology, the Department shall consider how such technology may enhance the Department's ability to protect inmates from sexual abuse.

21. **Disciplinary Sanctions**.
    A. **Staff Discipline** In accordance with Administrative Directives 2.6 Employee Discipline and 2.17 Employee Conduct, staff shall be subject to disciplinary sanctions up to and including termination for violating agency inmate sexual abuse and/or harassment policies. Termination is the presumptive disciplinary sanction for staff who have been found to have engaged in sexual abuse. All terminations for violations of agency inmate sexual abuse or harassment policies or resignations by staff who would have been terminated but for their resignation shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to any relevant licensing bodies.

    B. **Corrective Action for Contractors, Vendor and Volunteers**. Any contractor, vendor or volunteer who engages in sexual abuse shall be prohibited from contact with inmates and shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to relevant licensing bodies. The facility shall take appropriate remedial measures, and shall consider whether to prohibit further contact with inmates, in the case of any other violation of agency inmate sexual abuse or sexual harassment policies by a contractor or volunteer.

    C. **Inmate Discipline**. Inmates shall be subject to disciplinary sanctions in accordance with Administrative Directive 9.5 Code of Penal Discipline if an investigation finds that the inmate engaged in inmate-on-inmate sexual abuse or following a criminal finding of guilt for inmate-on-inmate sexual abuse. If the facility offers therapy, counseling, or other interventions designed to address and correct underlying reasons or motivations for the abuse, the facility shall consider whether to require the offending inmate to participate in such interventions as a condition of access to programming or other benefits.

    The agency may discipline an inmate for sexual contact with staff only upon a finding that the staff member did not consent to such contact. A report of sexual abuse, made in good faith based on a reasonable belief

| Directive Number 6.12 | Effective Date 7/20/15 | Page 17 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

that the alleged conduct occurred shall not constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation.  However, if an investigation concludes that the report of sexual abuse was not made in good faith, an inmate may be subject to discipline in accordance with Administrative Directive 9.5 Code of Penal Discipline.

All sexual activity between inmates is prohibited and inmates may be disciplined for engaging in this activity.  However, if the activity is not coerced, inmates engaging in the activity will not be found guilty of sexual abuse, although they may be subject to other disciplinary sanctions.

22.  <u>Review by Facility of Sexual Abuse Incidents</u>. Each facility shall conduct a sexual abuse incident review at the conclusion of <u>every</u> sexual abuse investigation unless the incident has been determined to be unfounded. The review shall ordinarily occur within 30 days of the conclusion of the investigation.  The review team shall include upper-level management officials, with input from line supervisors, investigators and medical or mental health practitioners.  The review team shall: (1) consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse; (2) consider whether the incident or allegation was motivated by race, ethnicity, gang affiliation, gender identity, status or perceived status as lesbian, gay, bisexual or intersex, or was motivated or otherwise caused by other group dynamics at the facility; (3) examine the area in the facility where the incident allegedly occurred to assess whether physical barriers in the area may enable abuse; (4) assess the adequacy of staffing levels in that area during different shifts; (5) assess whether monitoring technology should be deployed or augmented to supplement supervision by staff; and (6) prepare a report of its findings, including but not necessarily limiting the report to the areas laid out herein as well as any recommendations for improvement.  The report shall be submitted to the facility's unit administrator and the PREA Director.

The facility shall implement the recommendations for improvement or shall document its reasons for not doing so.

23.  <u>Reporting</u>. Documentation and reporting of sexual abuse/ sexual harassment or related behavior shall be as follows:

A.    <u>Internal Reporting</u>. All sexual abuse/ sexual harassment shall be documented on CN 6601, Incident Report in accordance with Administrative Directive 6.6, Reporting of Incidents and included in the monthly STARS report in accordance with Administrative Directive 1.6, Monthly and Annual Reports.  Each documented report of sexual abuse/ sexual harassment shall be reviewed by the facility PREA Compliance Manager. Such review shall be documented on CN 61203; PREA Incident Post-Investigation Facility Review. The STARS report shall list all the reports of sexual abuse/ sexual harassment including:

1. Substantiated Allegations
2. Unsubstantiated Allegations
3. Unfounded Allegations

This information shall also be compiled for each residential facility with which the Department contracts for the housing of inmates.

| Directive Number 6.12 | Effective Date 7/20/15 | Page 18 of 19 |
|---|---|---|
| Title | Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | |

The information described in this section shall be made readily available to the public at least annually through the Department's website.  The sexual abuse data collected shall be retained for at least 10 years after the date of initial collection unless Federal, State or local law requires otherwise.

B.   **External Reporting**: Annually, sexual abuse/ sexual harassment statistics shall be provided to the United States Department of Justice (Bureau of Justice Statistics). The annual report shall include the statistics in the following categories:

1.   Nonconsensual sexual acts that were: (a) reported; (b) substantiated; (c) unsubstantiated; (d) unfounded; (e) on which investigation is ongoing;

2    Abusive sexual contacts that were: (a) reported; (b) substantiated; (c) unsubstantiated; (d) unfounded; (e) on which investigation is ongoing;

3.   Staff sexual misconduct that was: (a) reported; (b) substantiated; (c) unsubstantiated; (d) unfounded; (e) on which investigation is ongoing;

4.   Staff sexual harassment that was: (a) reported; (b) substantiated; (c) unsubstantiated; (d) unfounded; (e) on which investigation is ongoing;

5    Total number of substantiated incidents.

The annual report shall be forwarded to the U.S. Department of Justice (Bureau of Justice Statistics) via Internet transmission to the following address: http://harvester.census.gov/ssv.  Upon request by the Department of Justice, the Department shall also provide all such data for the previous calendar year.

C.   **Tracking**. The Department's PREA Investigation Unit shall track all allegations of sexual abuse/ sexual harassment to include investigation results and any actions taken by the Department, Connecticut State Police and/or the courts.

The agency PREA Coordinator shall review data collected and aggregated to assess and improve the effectiveness of the Department's sexual abuse prevention, detection, and response, policies, practices and training by: (1) identifying problem areas; (2) recommending corrective action on an ongoing basis; and (3) preparing an annual report of the findings and corrective actions for each facility as well as the Department as a whole.  This report shall include a comparison of the current year's data and corrective actions with those from prior years and shall provide an assessment of the agency's progress in addressing sexual abuse.  The report shall be approved by the Commissioner and be made readily available to the public through the Department's website.  Prior to being made publicly available, information that would present a safety and security threat if made public can be redacted from the report with an explanation as to the nature of the redacted information.

24.   **AUDITS**
During the three-year period starting in 2013 and continuing for each three year period thereafter, the Department shall ensure that each facility it operates and each community confinement center with which it contracts for the housing of inmates in the community is audited at least once.  Each year the Department shall ensure the audit of at least a third of its jails, prisons and community confinement centers.  Auditors must be appropriately qualified and certified.  The Department shall not use the

| Directive Number | Effective Date | Page 19 of 19 |
|---|---|---|
| 6.12 | 7/20/15 | |
| Title | | |
| Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention | | |

services of an auditor who has received compensation from the Department in the past three years (except for payment for PREA audits) and the Department shall not employ, contract with, or otherwise financially compensate the auditor for three years following the audit (except for subsequent PREA audits).

The auditor shall be given access to all areas of the audited facilities and shall be permitted to receive copies of any relevant documents, tapes and other electronically available data that is relevant to the audit. The auditor shall be permitted to conduct private interviews with inmates, residents and staff, supervisors and administrators. Inmates shall be permitted to send confidential information or correspondence to the auditor in the same manner as if they were communicating with legal counsel.

If an audit makes a "Does Not Meet Standard" finding on one or more standard, the Department shall work jointly with the auditor to develop a corrective action plan to achieve compliance. The Department shall cooperate with the auditor's attempts to verify implementation of the corrective action plan.

25. <u>Forms and Attachments</u>. The following forms and attachments are applicable to this Administrative Directive and shall be utilized for the intended function;
   a. CN 61201, PREA Incident Check Sheet-Initial Report Or Allegation Of Sexual Abuse.
   b. CN 61202, PREA Incident Check Sheet- Initial Report Or Allegation Of Sexual Harassment.
   B. CN 61203, PREA Incident Post-Investigation Facility Review Form.

26. <u>Exceptions</u>. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner of Correction.

| State of Connecticut<br>Department of Correction | Directive Number<br>6.6 | Effective Date<br>10/01/2018 | Page 1 of 6 |
|---|---|---|---|
| **ADMINISTRATIVE<br>DIRECTIVE** | Supersedes<br>Reporting of Incidents, dated 7/20/15 | | |
| Approved By:<br><br>Commissioner Scott Semple | Title<br><br>Reporting of Incidents | | |

1. <u>Policy</u>. The Department of Correction shall ensure that all incidents and emergencies are reported in a complete, accurate and timely manner.

2. <u>Authority and Reference</u>.
    a. Public Law 108-79, Prison Rape Elimination Act of 2003.
    b. 28 C.F.R. 115, Prison Rape Elimination Act National Standards.
    c. Connecticut General Statutes, Sections 4-8a, 4-33a, 18-81 and 18-81v.
    d. Administrative Directives 2.18, Critical Incident Stress Response Program; 3.2, Handling of Funds; 6.2, Facility Post Orders and Logs; 6.5, Use of Force; 6.9, Collection and Retention of Contraband and Physical Evidence; 6.10, Inmate Property; 6.12, Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention; 7.3, Emergency Plans; 7.7, Radio Communications; 8.2, Offender Death, 9.4, Restrictive Status; and 9.5, Code of Penal Discipline.

3. <u>Definitions and/or Acronyms.</u> For the purposes stated herein, the following definitions apply:
    a. <u>EHR.</u> Electronic Health Record.
    b. <u>PREA.</u> Prison Rape Elimination Act.

4. <u>Classes of Incidents.</u> Incidents shall be divided into three (3) classes in order to provide responses and notification commensurate with the level of the incident. Each class of incident shall be identified on Attachment B, Incident Class Reference Guide.

5. <u>Notification General Provisions and Procedures</u>. Notification and reporting of incidents shall conform to the following requirements:
    a. <u>General Provisions:</u>
        i. All Unit Administrators, Directors or their designees shall be responsible for reporting each class of incident in accordance with this Directive, to their immediate supervisor.
        ii. The on-call Public Information Officer shall be notified for all Class 1 incidents and any Class 2 or 3 incidents, which have the potential to generate significant media, public official or community attention.
        iii. In accordance with Administrative Directive 2.18, Critical Incident Stress Response Program (CISRP), the Unit Administrator shall notify the CISRP Coordinator when a critical incident occurs that has the potential to cause distress in an individual(s) and may interfere with a person's ability to function.
            1. Notification shall be classified as either a mandatory or discretionary activation, contingent upon the number of employees affected, severity of the event and/or magnitude of the Department response as indicated below:
                a. <u>Mandatory Activation.</u> The Unit Administrator shall immediately notify the CISRP Coordinator in the following cases:
                    i. Riot;
                    ii. Hostage situation;
                    iii. Employee death on post;
                    iv. Employee suicide;
                    v. Large-scale destruction or disaster;
                    vi. Witnessing inmate suicide or violent death;
                    vii. Staff assault that results in a serious injury as categorized by CN 6603, Report of Assault on Staff;
                    viii. Inmate disturbance as classified by Administrative Directive 9.5, Code of Penal Discipline; and,
                    ix. Sexual abuse of an employee.

| Directive Number | Effective Date | Page 2 of 6 |
|---|---|---|
| 6.6 | 10/01/2018 | |
| Title | | |
| Reporting of Incidents | | |

    b. **Discretionary Activation.** The Unit Administrator shall assess each incident and the reaction of the affected employee(s) to determine the need for notification of the CISRP Coordinator in the following cases:

        i.  Staff assault that results in a non-serious injury as categorized by CN 6603, Report of Assault on Staff;

       ii.  Fire;

     iii.  Threat;

      iv.  Attempted inmate suicide; and,

       v.  Occupational exposure.

  iv.  In accordance with Administrative Directive 6.12, Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention Policy when it is suspected that an undocumented PREA related incident has occurred, the Connecticut State Police shall be notified.

   v.  The Director of External Affairs or designee shall report to the Division of Criminal Justice any inmate that has been declared to have died while under the custody of the Department of Correction.

  vi.  Any incident related to a suspected breach of inmate protected health information shall be documented and   reported to the department's Privacy Officer.

 vii.  Identified Health Services Unit staff shall be notified regarding specific incidents in accordance with Attachment C, Health Services Unit Notification Requirements.

viii.  Any fire shall be reported by the Shift Commander or designee to the Department's Fire Safety Manager and to the Bureau of the State Fire Marshal (24-hour emergency hotline: 1-800-842-0200).

b.  Notification Procedures dictated by incident class.

    i.  **Class 1 Incidents.** Class 1 incidents shall be reported by utilizing Form 7301, Facility Emergency Notification Sheet in accordance with emergency procedures enumerated in each facility's Emergency Plans and Administrative Directive 7.3, Emergency Plans:

      1.  Class 1 incidents shall be immediately reported verbally to the Unit Administrator or designee. The Unit Administrator or designee shall ensure the incident is communicated to the District Administrator.

        a.  If no successful contact is made within ten (10) minutes to the District Administrator, the Deputy Commissioner of Operations and Rehabilitive Services shall be contacted. .

        b.  If no contact is made with either District Administrator or Deputy Commissioner of Operations and Rehabilitive Services within twenty (20) minutes, the Commissioner shall be contacted.

      2.  The community alert system shall be activated by the Deputy Commissioner of Operations and Rehabilitative Services or designee when the Unit Administrator has determined that the incident may impact the community. The Unit Administrator or higher authority shall direct the use of the Department's Everbridge mass notification system.

      3.  The District Administrator shall ensure that the Deputy Commissioner of Operations and Rehabilitative Services is notified, who shall in turn notify the Commissioner and as appropriate, the Director of Security.

      4.  Concurrent to the notification of the incident through the chain of command, the following Class 1 incidents shall also be reported by the Unit Administrator or designee, to the Connecticut State Police/local police, community, ambulance and fire rescue, as necessary:

        a.  Riot/Disturbance;

        b.  Hostage situation;

        c.  Employee job action;

        d.  Major fire;

        e.  Disaster (natural or man-made);

        f.  Confirmed and unconfirmed escapes;

| Directive Number | Effective Date | Page 3 of 6 |
|---|---|---|
| 6.6 | 10/01/2018 | |
| Title | | |
| Reporting of Incidents | | |

    g. Bomb threat;

    h. Suspected bio-chemical contamination;

    i. Terrorist attack, threat or intelligence of suspected terrorist activity;

    j. Death of an on-duty employee, inmate, visitor or volunteer; and,

    k. Incident of workplace violence as enumerated in Attachment B, Incident Class Reference Guide.

    5. Any incident of inmate-on-inmate sexual abuse, inmate-on-staff sexual abuse or staff-on-inmate sexual abuse/misconduct shall be reported to the Duty Officer as soon as practical.

    6. Reports shall be handled in accordance with Sections 5, 6, and 7 of this Directive.

  ii. Class 2 Incidents.

    1. Class 2 incidents shall be reported verbally to the Unit Administrator or designee as soon as possible, who shall in turn, notify the District Administrator, as appropriate.

    2. The District Administrator shall notify the Deputy Commissioner of Operations and Rehabilitative Services of any significant Class 2 incidents, who shall further advise the Commissioner and Director of Security, as appropriate.

    3. Reports shall be handled in accordance with Sections 5, 6, and 7 of this Directive.

  iii. Class 3 Incidents.

    1. Class 3 incidents shall be forwarded to the Unit Administrator.

    2. Any further notification shall be at the discretion of the Unit Administrator.

    3. Reports shall be handled in accordance with Sections 5, 6, and 7 of this Directive.

6. Logbooks and Incident Report Numbering System.

  a. A unique identification shall be assigned to each incident report for tracking, filing and retrieval purposes.

  b. The identification shall be recorded in a master incident report log in sequential order in accordance with Administrative Directive 6.2, Facility Post Orders and Logs.

  c. The identification format shall be as follows:

    i. EXAMPLE: CRCC-2005-01-001

      1. ( facility/unit initials – calendar year (four digit); –

      2. month (01 through 12); and, –

      3. Sequence number (001 through 999)).

        a. The sequence number shall be reset at the beginning of each month.

7. Incident Report Package General Provisions and Documentation Requirements.

  a. General Provisions.

    i. All incidents shall require the completion of CN 6604, Incident Report to document all activity and subsequent actions.

    ii. All reports relevant to an incident shall be collected and assembled in the Incident Report Package by a supervisor.

    iii. All applicable documents identified in the CN 6601, Incident Report Package- List of Contents shall be included in the Incident Report Package.

  b. Specific Documentation Requirements. Specific documentation requirements for forms identified on the CN 6601, Incident Report Package- List of Contents are as follows:

    i. CN 6601, Incident Report Package List of Contents.

      1. This report shall be prepared by a supervisor and submitted through their chain of command for review and action.

      2. All subsequent contents found within the CN 6601, Incident Report Package- List of Contents shall follow the designated line items outlined within said form. 61

| Directive Number 6.6 | Effective Date 10/01/2018 | Page 4 of 6 |
|---|---|---|
| Title | | |
| Reporting of Incidents | | |

       3. Each type of report noted shall have the number of pages for the specific report identified.
          a. The total number of pages shall be added up and identified at the bottom of the form.

  ii. <u>CN 6602, Shift Commander Overview and Notification Sheet.</u>
       1. This report shall be prepared by the Shift Commander or Acting Shift Commander.
          a. If the author of the CN 6602, Shift Commander Overview and Notification Sheet needs to provide more documentation regarding the incident, a CN 6604, Incident Report-Supplemental shall be utilized.
       2. This report shall be completed by the end of shift or as soon as feasibly possible for any Class 1, 2, or 3A incidents.
          a. This report shall be completed by the next business day for any other incident.

 iii. <u>CN 6603, Critical Incident Brief.</u>
       1. For all class 1, 2 and 3A incidents, this report shall normally be completed by the supervisor that provided direct oversight to the specific incident by the end of shift or as soon as feasibly possible and submitted to the Unit Administrator and/or designee(s).
          a. If a supervisor who did not provide direct oversight to an incident completes this paperwork, the reason shall be noted within the body of the report.
       2. The Unit Administrator or designee shall submit the report to the District Administrator by the next business day.

  iv. <u>CN 6604, Incident Report.</u>
       1. This report shall be prepared by the employee who first witnesses or first reports the incident. .
          a. If the author of the CN 6604, Incident Report needs to provide more documentation regarding the incident, a CN 6605, Incident Report-Supplemental Report shall be utilized.

  v. <u>CN 6605, Incident Report-Supplemental.</u>
       1. All employees who respond to and witness an incident may be required to submit a supplemental incident report regarding the employee's actions and observations.
       2. A supervisor who was involved and/or supervised the incident shall completed this report to document their actions.

  vi. <u>CN 6606, Medical Incident Report.</u>
       1. This report shall be submitted by health services personnel who examined the individual(s) involved for injuries resulting from an incident.
       2. The CN 6606, Medical Incident Report shall be signed by the inmate except in those occasions when the inmate is not physically able to, the inmate's behavior prevents signature (i.e., combative) or when the inmate refuses to sign.
          a. When CN 6606, Medical Incident Report is not signed by the inmate, Health Services personnel shall indicate the reason for the lack of inmate signature in the patient signature field.
       3. All CN 6606, Medical Incident Report(s) shall be scanned into the inmate's EHR.

 vii. <u>CN 6607, Report of Assault on Staff.</u>
       1. This report shall be prepared by the Shift Commander or designee.
          a. This report shall be completed for each staff member who was assaulted.

viii. <u>CN 6608, Informational Log.</u>
       1. In accordance with Administrative Directive 7.7, Radio Communications, upon notification of any facility emergency, control center staff shall initiate a CN 6608, Informational Log.
          a. The CN 6608, Informational log shall be included each the Incident Report Package when a facility emergency is announced over a radio transmission.

| Directive Number | Effective Date | Page 5 of 6 |
|---|---|---|
| 6.6 | 10/01/2018 | |
| Title | | |
| Reporting of Incidents | | |

     ix. <u>CN 6609, Inmate Interview Statement.</u>
         1. This report shall be utilized any time an inmate is interviewed by Department of Correction staff or outside law enforcement.
     x. <u>CN 6610, Inmate Request/Waiver for Criminal Charges against another Inmate.</u>
         1. When completion of this form is deemed appropriate by a supervisor, this report shall be completed by the supervisor who oversaw the incident and delivered to the inmate for signature.
         2. Any inmate who requests for criminal charges against another inmate shall be permitted to request for the applicable documentation to be completed prior to the end of shift that the incident occurred on.
            a. Inmates who wish to pursue criminal charges once the shift ends shall be responsibility to do so via mail and through their own means.
         3. Any request for criminal charges with is related to a suspect PREA incident shall be reported to outside law enforcement in accordance with Administrative Directive 6.12, Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention.
     xi. <u>CO-853, Report of Loss or Damage to Real and Personal Property.</u>
         1. This report shall be completed by the Unit Administrator or designee when there is loss or damage to real or personal property, other than motor vehicles in accordance with Administrative Directive 3.2, Handling of Funds. This shall include, but not be limited to:
            a. theft,
            b. vandalism,
            c. criminal or malicious damage,
            d. and lost or misplaced funds.
         2. The original, in quintuplicate, shall be forwarded to the Director of Fiscal Services. A copy shall be included with the CN 6603, Incident Report.
     xii. Other relevant documents related to the incident or aftermath shall be notated on the CN 6601, Incident Report Package-List of Contents under the 'Miscellaneous' line item.

8. <u>Corroborating Information.</u> All physical evidence, to include, but not limited to, video recordings and/or photographs shall be handled, collected and retained in accordance with Administrative Directive 6.9, Collection and Retention of Contraband and Physical Evidence.

9. <u>Report Reviews.</u>
    a. A shift supervisor shall ensure, whenever possible, that all reports are typed, completed and signed the same day during which an incident occurred.
    b. A shift supervisor shall review all reports for completeness and accuracy.
    c. The Shift Commander or Acting Shift Commander shall prepare a summary report of all submitted incident reports, and document any necessary recommendations on a CN 6602, Shift Commander Overview and Notification form within the appropriate guidelines and reporting requirements found within this directive and Administrative Directive 6.9, Collection and Retention of Contraband and Physical Evidence.
    d. The Unit Administrator shall review and co-sign all incident report packages.
       i. The Unit Administrator or designee shall be responsible for maintaining a permanent log and filing system of all such reports.

10. <u>Forms and Attachments.</u> The following forms are applicable to this Administrative Directive and shall be utilized for its intended function:
    a. CN 6601, Incident Report Package List of Contents;
    b. CN 6602, Shift Supervisor Overview and Notification Sheet;
    c. CN 6603, Critical Incident Brief;
    d. CN 6604, Incident Report;
    e. CN 6605, Incident Report-Supplemental;
    f. CN 6606, Medical Incident Report;
    g. CN 6607, Report of Assault on Staff

| Directive Number | Effective Date | Page 6 of 6 |
|---|---|---|
| 6.6 | 10/01/2018 | |
| Title | | |
| Reporting of Incidents | | |

    h. CN 6608, Informational Log;
    i. CN 6609, Inmate Interview Statement; and,
    j. CN 6610, Inmate Request for Criminal Charges against another Inmate.
    k. Attachment A, Post Incident Employee Work Place Reference (POWER) card;
    l. Attachment B, Incident Class Reference Guide; and
    m. Attachment C, Health Services Unit Notification Requirements.

11. <u>Exceptions</u>. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

| State of Connecticut<br>Department of Correction | Directive Number<br>10.19 | Effective Date<br>8/1/2014 | Page<br>1 of 7 |
|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Supersedes<br><br>Americans with Disabilities Act, dated 9/15/2008 | | |
| Approved By<br><br>*James Dzurenda*<br><br>Commissioner James E. Dzurenda | Title<br><br>Americans with Disabilities Act | | |

1. <u>Policy</u>. The Department of Correction shall make reasonable accommodations or modifications to allow qualified inmates with disabilities the same opportunities as non-disabled inmates unless to do so would be an undue burden to the Department, cause a fundamental alteration to a program or might tend to jeopardize the safety or security of the public, staff, inmates or facility.

2. <u>Authority and Reference</u>.

   A. United States Code, 42 USC Section 12101 et seq, Americans with Disabilities Act of 2008.
   B. ADA Amendments Act of 2008, (public law 110-325, ADAAA).
   C. 28 CFR section 35.152, et seq. Nondiscrimination on the Basis of Disability in State and Local Government Services
   D. Connecticut General Statutes, Sections 18-81, 18-84, 46a-51, 46a-63(2), 46a-71 and 46a-77.
   E. Administrative Directives 9.6, Inmate Administrative Remedies; 10.1, Inmate Assignment and Pay Plan; and, 10.20, Correctional Enterprises of Connecticut.
   F. American Correctional Association, Standards for Adult Correctional Institutions, Fourth Edition, January 2003, Standard 4-4142.
   G. American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition, June 2004, Standard 4-ALDF-2A-51.

3. <u>Definitions</u>. For the purposes stated herein, the following definitions apply:

   A. <u>Blind</u>. Refers to an individual whose central visual acuity does not exceed 20/200 in the better eye with correcting lenses, or whose visual acuity is greater that 20/200 but is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than twenty degrees.
   B. <u>Deaf</u>. Refers to an individual who cannot readily understand spoken language through hearing alone and who may also have a speech defect, which renders speech unintelligible to most people with normal hearing.
   C. <u>Disabled Inmate</u>. An inmate who has a physical or mental impairment that substantially limits one or more major life activities; who has a record or history of such impairment; or is perceived or regarded as having such impairment.
   D. <u>Major Life Activities</u>. Major life activities include but are not limited to functions such as caring for oneself, performing manual tasks, <u>walking</u>, seeing, hearing, <u>speaking</u>, breathing, eating, <u>sleeping</u>, <u>standing</u>, lifting, bending, <u>reading</u>, <u>concentrating</u>, thinking, <u>communicating</u>, learning and <u>working</u>.

E.   **Mentally Disabled**. An individual who has a record of, or is regarded as having one or more mental disorders, as defined in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders and/or a mental or psychological disorder such as an intellectual disability, organic brain syndrome, emotional or mental illness or learning disabilities.

F.   **Physically Disabled or a Person with a Physical Disability**. An individual who has a chronic physical infirmity or impairment.

G.   **Impairment**. Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems; neurological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin and endocrine. It also means any mental or psychological disorder, such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

H.   **Qualified Individual with a Disability**. An individual with a disability who, with the assistance of a reasonable accommodation, is able to meet the essential eligibility requirements for the receipt of services or the participation in programs or activities.

I.   **Qualified Sign Language Interpreter**. Sign language interpreter certified by the National Registry of Interpreters for the Deaf or approved by the Connecticut Commission for the Deaf and Hearing Impaired. A qualified interpreter means an interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary.

J.   **Reasonable Accommodation**. Any change in the environment or the manner in which tasks are completed that enables a qualified individual with a disability to participate in a program or service. Such accommodation shall not impose undue hardship on the Department, alter the fundamental nature of a program, or compromise the safety or security of the public, staff, inmates or facility.

K.   **Substantially Limit**. The impairment imposes a significant barrier in the performance of a major life activity.

4.   **Department Americans with Disabilities Act (ADA) Coordinator**. The Director of Programs and Treatment (Division) shall appoint the Director of Health Services or designee as the Department ADA Coordinator. The Department ADA Coordinator shall be knowledgeable regarding the provisions of the Americans with Disabilities Act in order to coordinate the requirements of the ADA with respect to inmates. The duties of the Department ADA Coordinator shall include, but not be limited to, the following:

A.   Develop procedures for the prevention of discrimination against qualified inmates with disabilities.

B.   Analyze the Department's administrative directives, unit directives, policies and procedures and recommend changes to assist in compliance with the ADA with respect to inmates.

C.   In consultation with facility and Department Administrators, coordinate the planning and purchasing of adaptive equipment for qualified inmates with disabilities.

D.   In consultation with the Director of Facilities Management and Engineering Services recommends structural changes, where warranted, to comply with ADA requirements with respect to inmates.

Case 3:19-cv-01415-AVC Document 14-1 Filed 11/22/19 Page 49 of 58

E.  In consultation with the Director of Offender Classification and Population Management, take steps to enable qualified inmates with disabilities to be placed in facilities appropriate for given disabilities consistent with safety and security.

F.  Coordinate reasonable accommodations for qualified inmates with disabilities with outside service providers consistent with safety and security.

G.  Coordinate training for all Unit ADA Coordinators on the requirements of this Directive.

H.  Provide assistance to staff, including Unit ADA Coordinators in determining whether and how accommodations may be provided to inmates.

I.  Facilitate ongoing training for Unit ADA Coordinators.

J.  Review monthly unit reports related to ADA activity and compile statistics to track ADA compliance with respect to inmates.

5.  <u>Unit ADA Coordinator</u>. Each Unit Administrator as well as the Director of Parole and Community Services shall appoint a supervisor/manager to act as Unit ADA Coordinator who shall be trained in the requirements of this Directive and those ADA requirements that are relevant to the Unit ADA Coordinator's duties. The duties of the Unit ADA Coordinator shall include, but not be limited to, the following:

A.  Review proposed and existing unit directives, policies and procedures to assess compliance with Department guidelines regarding ADA compliance with respect to inmates.  Provide recommendations to the Unit Administrator for potential corrective action.

B.  Receive copies of all inmate appeals which relate to ADA issues and conduct initial processing of CN 101902, Requests for Reasonable Accommodation forms.

C.  In consultation with the Unit Administrator, the ADA Coordinator shall resolve requests for accommodation by arranging for:

1.  evaluation of inmates by qualified experts as necessary;

2.  transfers to appropriate correctional facilities; and,

3.  ADA required auxiliary aids as required, consistent with the professional evaluation of the disability.

D.  Ensure adequate copies of the attachments to this Directive are available in each facility housing unit.

E.  Ensure appropriate documentation on reasonable accommodation is maintained in the inmate's master file.

F.  Notify unit staff of inmate disability accommodation and any advisable modification of unit procedure and in accordance with Section 7 of this Directive.

G.  Submit a monthly ADA report to the Unit Administrator and the Department ADA Coordinator as required.

6.  <u>Inmate Admission and Orientation</u>.

A.  <u>Admission</u>. Any inmate who appears to have a condition that would limit the inmate's access to and/or participation in, any program or service offered by the facility, shall be handled as follows:

1.  Inmates who are deaf, blind, or have other physical disabilities that significantly limit access to programs and services in the facility, shall be transferred to an appropriate facility within 72 hours of admittance for

assessment and classification consistent with safety and security. The determination for transfer shall be made by the contracted health services provider Health Services Administrator or designee. During assessment and classification, the inmate shall be provided with CN 101901, Americans with Disabilities Act - Notice of Rights and CN 101902, Request for Reasonable Accommodations by health services staff or qualified sign language interpreter for the deaf or hard of hearing inmates who know sign language. Inmates shall be advised of their right to reasonable accommodations which may include a qualified sign language interpreter or other auxiliary aids, services and devices, the method for requesting such accommodation and the procedures for seeking an administrative remedy of a denial or modification of such requested accommodation. The inmate shall be required to complete the Request for Reasonable Accommodations indicating whether or not the inmate requests accommodation.

2.  Any inmate newly received into the custody of the Department of Correction who appears to meet the definition for mentally disabled shall be transferred to an appropriate facility within 72 hours of admission for assessment and classification consistent with safety and security. The determination for transfer shall be made by the contracted health services provider qualified mental health professional. Upon arrival, inmates shall be advised of their rights to reasonable accommodations, the method for requesting such accommodation and the procedures for seeking an administrative remedy of a denial or modification of such requested accommodation. The inmate shall be required to complete the Request for Reasonable Accommodations indicating whether or not the inmate requests accommodation.

B.  <u>Orientation</u>. Classification and health services staff shall, as a component of the facility orientation process, ask each newly admitted inmate if they require a reasonable accommodation. The inmate shall be provided with CN 101901, Americans with Disabilities Act - Notice of Rights and CN 101902, Request for Reasonable Accommodations. Inmates shall be advised of their right to reasonable accommodations, the method for requesting such accommodation and the procedures for seeking an administrative remedy of a denial or modification of such requested accommodation. The inmate shall be required to complete the Request for Reasonable Accommodations indicating whether or not the inmate requests accommodation. CN 101901, Americans with Disabilities Act - Notice of Rights shall be part of the orientation packet.

C.  <u>Request for Reasonable Accommodations</u>. In accordance with the provisions of this section, if an inmate requests reasonable accommodations, CN 4401, Authorization to Obtain and/or Disclose Protected Health Information shall be signed by the inmate authorizing health services staff to obtain and review all relevant medical history for continuity of care and to determine extent and origin of the disability and need for accommodations for the inmate. The Unit ADA Coordinator shall make arrangements with the contracted health services provider nursing supervisor for evaluation by qualified experts (e.g. audiologist, ophthalmologist, etc.) if necessary to verify any functional impairment and determine the need

| Directive Number 10.19 | Effective Date 8/1/2014 | Page 19 of |
|---|---|---|
| Title | Americans with Disabilities Act | |

for reasonable accommodation. As a result of the review and assessment, reasonable accommodations shall be developed if required by the ADA. All recommendations for reasonable accommodations shall be made by the contracted health services provider Health Services Administrator or designee and be forwarded to the Unit ADA Coordinator, who shall review the recommendations for the potential impact on safety and security. Modifications to the recommendations due to safety and security concerns shall be forwarded to the Unit Administrator for final disposition.

7. <u>Reasonable Accommodation Efforts</u>. Reasonable efforts shall be made to provide reasonable accommodation throughout the incarceration of an inmate with mental and/or physical disabilities. Documentation of the initial determination as described in this section shall be maintained in section 6 of the inmate's master file. Appropriate reasonable accommodation may differ depending on the ability of the inmate and the nature of the program or activity in question.

   A.  A request for reasonable accommodations may include the following and shall be forwarded to the ADA Coordinator immediately to handle in accordance with Section 6 of this Directive:

      1.  An oral or written request to any staff person; or,
      2.  A request for assistance or expressions of difficulty in communication or understanding by deaf or hearing impaired inmates or inmates with mental impairment.

   B.  Requests shall be acted upon within two (2) business days or less if necessary.
   C.  If the request is denied, the inmate shall be notified in writing and advised of the right to review the disposition directly with the Unit ADA Coordinator. Upon such request, the Unit ADA Coordinator shall meet with the inmate within 24 hours and render a subsequent decision within one (1) week. If the disposition has not changed, the inmate shall be advised of the right to appeal the decision in accordance with Administrative Directive 9.6, Inmate Administrative Remedies.
   D.  In order to ensure that an inmate who requires a reasonable accommodation is provided with such, <u>each facility shall develop and maintain a system to alert staff that an inmate requiring a reasonable accommodation is assigned to the housing unit in which the staff are working. Staff shall only be advised of inmates with mental or physical disabilities when there is a reasonable accommodation requirement or as required for safety and security or other legitimate penal interests.</u>

8. <u>Appeal of an Americans with Disabilities Act (ADA) Decision</u>. An inmate may file an appeal regarding an ADA decision in accordance with Administrative Directive 9.6, Inmate Administrative Remedies. A copy of each appeal and all decisions rendered regarding the appeal shall be maintained by the Department ADA Coordinator.

9. <u>Facility Placement</u>. In addition to all other factors considered by the Department in making institutional or community assignments of inmates, consideration may be given, consistent with security factors, to facilities and programming available at various institutions or community residential programs to accommodate an inmate's particular disabilities.

The Director of Offender Classification and Population Management shall ensure that a facility at each security level is available for reasonable accommodation. Any documentation submitted relating to a transfer of a disabled inmate shall clearly indicate that the inmate is disabled and include what level of accommodation and resulting services are required.

10.  Inmate Work Programs. No qualified inmate with a disability shall be discriminated against from participation in work programs. The Department shall make reasonable accommodation to the known disability of qualified inmate applicants consistent with safety and security. Accommodations that exceed the requirements of the ADA shall not be provided. Compensation and assignment shall be in accordance with Administrative Directives 10.1, Inmate Assignment and Pay Plan and 10.20, Correctional Enterprises of Connecticut.

11.  Suspensions during Emergency or to Further Legitimate Penological Interests. In an emergency or disruption of normal institutional operation, or in furtherance of the legitimate penological interests of a facility or the Department, any provision or section of this Directive may be suspended, for any inmate or all inmates, by the Commissioner or designee.

12.  Unit Directives. Each Unit Administrator as well as the Director of Parole and Community Services shall develop unit directives in order to address the needs of inmates with disabilities at the local level.

13.  Auxiliary Aids and Services. Unless legitimate penological interests warrant otherwise, auxiliary aids and services shall be provided to assist an inmate in the following areas:

A.  Educational/Vocational activities;
B.  Appeal procedures;
C.  Administrative or disciplinary proceedings to include protective custody and restrictive status hearings;
D.  Orientation and classification proceedings;
E.  Mental Health Counseling; and,
F.  Medical Services.

14.  Assistance Devices for Deaf, Hearing-Impaired, Blind or Visually Impaired Inmates. The following assistance devices shall be made available as needed:

A.  Deaf and Hearing-Impaired.

1.  TDD/TTY for telephone use - access to TDD/TTY shall be equivalent to access to telephones by hearing inmates except that additional time for each call shall be allotted because the assistance devices take additional time to communicate through the system;
2.  Amplified telephone handsets;
3.  Closed caption television/VCR decoder;
4.  Sound amplification and assistance listening devices;
5.  Sound signals and flashing alarms;
6.  Visual smoke alarms;
7.  Hearing aids and batteries; and,
8.  Any other item that might be required.

| Directive Number | Effective Date | Page Number of |
|---|---|---|
| 10.19 | 8/1/2014 | |
| Title | Americans with Disabilities Act | |

Oral announcements and commands, whether through public address system or other means, shall be communicated to the deaf and hard of hearing inmates in a manner which can be understood. Deaf and hearing impaired inmates shall not be disciplined for failure to obey an order or rule which may not have been communicated to the inmate at all or in a manner which could be understood by a deaf or hard of hearing inmate.

The facility shall ensure that visual alarms or manual means of notifying deaf or hard of hearing inmates of such things as emergencies, counts, and announcements shall be utilized whenever and wherever the inmate may be in the facility.

B. <u>Blind and Visually Impaired</u>.

1. Large print books;
2. Books on tape;
3. Escorts;
4. Orientation and Inmate Handbook in Braille or large print, as needed;
5. Cane; and,
6. Any other item that might be required.

The facility shall ensure that an escort be provided for visually impaired inmates during an emergency or any type of movement, as necessary.

15. <u>Training</u>. The Director of Training and Staff Development shall develop an ADA training curriculum for all direct contact employees and direct contact contract employees. All new direct contact employees shall receive ADA training as a component of pre-service training. There will be annual training for the Unit ADA Coordinators. Existing direct contact employees shall receive ADA training as a component of annual in-service training.

16. <u>Inter-Facility Transfer of Disabled Inmates</u>. Each facility shall have a formal process defined in their Unit Directives regarding the transfer of inmates who require a reasonable accommodation(s) for mental or physical disabilities. At a minimum Unit Directives will address the following:

A. The ADA Unit Coordinator of the sending facility shall communicate all reasonable accommodations required by an inmate who meets the definition of an individual with a disability to the ADA Unit Coordinator of the receiving facility prior to transfer.
B. The ADA Unit Coordinator of the sending facility will facilitate the transfer of equipment, devices or technologies required to make reasonable accommodations. These accommodations are subject to the approval of the Unit Administrator of the receiving facility.
C. Inmates shall not be required to re-document their need for reasonable accommodations at the receiving facility. This information will be documented in section 6 of the inmate's master file in accordance with this directive.

17. <u>Forms and Attachments</u>. The following forms are applicable to this Administrative Directive and shall be utilized for the intended function:
A. CN 101901, Americans with Disabilities Act - Notice of Rights; and,
B. CN 101902, Request for Reasonable Accommodations.
18. <u>Exceptions</u>. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

Oral announcements and commands, whether through public address system or other means, shall be communicated to the deaf and hard of hearing inmates in a manner which can be understood. Deaf and hearing impaired inmates shall not be disciplined for failure to obey an order or rule which may not have been communicated to the inmate at all or in a manner which could be understood by a deaf or hard of hearing inmate.

The facility shall ensure that visual alarms or manual means of notifying deaf or hard of hearing inmates of such things as emergencies, counts, and announcements shall be utilized whenever and wherever the inmate may be in the facility.

B. <u>Blind and Visually Impaired</u>.

1. Large print books;
2. Books on tape;
3. Escorts;
4. Orientation and Inmate Handbook in Braille or large print, as needed;
5. Cane; and,
6. Any other item that might be required.

The facility shall ensure that an escort be provided for visually impaired inmates during an emergency or any type of movement, as necessary.

15. <u>Training</u>. The Director of Training and Staff Development shall develop an ADA training curriculum for all direct contact employees and direct contact contract employees. All new direct contact employees shall receive ADA training as a component of pre-service training. There will be annual training for the Unit ADA Coordinators. Existing direct contact employees shall receive ADA training as a component of annual in-service training.

16. <u>Inter-Facility Transfer of Disabled Inmates</u>. Each facility shall have a formal process defined in their Unit Directives regarding the transfer of inmates who require a reasonable accommodation(s) for mental or physical disabilities. At a minimum Unit Directives will address the following:

A. The ADA Unit Coordinator of the sending facility shall communicate all reasonable accommodations required by an inmate who meets the definition of an individual with a disability to the ADA Unit Coordinator of the receiving facility prior to transfer.
B. The ADA Unit Coordinator of the sending facility will facilitate the transfer of equipment, devices or technologies required to make reasonable accommodations. These accommodations are subject to the approval of the Unit Administrator of the receiving facility.
C. Inmates shall not be required to re-document their need for reasonable accommodations at the receiving facility. This information will be documented in section 6 of the inmate's master file in accordance with this directive.

17. <u>Forms and Attachments</u>. The following forms are applicable to this Administrative Directive and shall be utilized for the intended function:
A. CN 101901, Americans with Disabilities Act - Notice of Rights; and,
B. CN 101902, Request for Reasonable Accommodations.

18. <u>Exceptions</u>. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.



# Americans with Disabilities Act - Notice of Rights
## Connecticut Department of Correction

CN 101901
REV 8/1/14

If you feel that you fall under the guidelines of the Americans with Disabilities Act and you need a reasonable accommodation because of that disability, you may request assistance with the following programs and services:

| Programs | Medical | Mental Health | Dental | Counseling | Parole |

| Orientation | Administrative Remedies | Disciplinary Proceedings | Special Events |

### How to request a reasonable accommodation:

Inmates may request services (e.g., interpreters, TTY phones, Braille books, etc.) in person or in writing utilizing CN 101902, Request for Reasonable Accommodations.
Forms and necessary assistance will be provided.

In (facility) :

ask :                                                      or any other staff.

### ADMINSTRATIVE REMEDY

Inmates whose requests for reasonable accommodations are denied or modified, or who believe they were discriminated against by Department of Correction because of their disabilities have the right to file an administrative remedy in writing by completing CN 9602, Inmate Administrative Remedy Form and depositing the completed form in the 'Administrative Remedies' box in accordance with Administrative Directive 9.6, Inmate Administrative Remedies. Inmates may request assistance in filing an administrative remedy.



# Request for Reasonable Accommodations
## Connecticut Department of Correction

CN 101902
REV 8/1/14

| Facility/Unit: | Date: |
|---|---|

| Inmate name: | Inmate number: |
|---|---|

☐ I do not request reasonable accommodations.

☐ I request the following reasonable accommodation:

Reason for accommodation:

| Inmate signature: | Date: |
|---|---|

Assisting staff (if necessary):

| Heath Services Unit verification (use established definitions) | Date: |
|---|---|

☐ Agree    ☐ Disagree

Comments:

| Health services staff name: | Title: |
|---|---|

Health services staff signature:

**RETURN THIS FORM TO THE UNIT ADA COORDINATOR**

| **REASONABLE ACCOMMODATION DETERMINATION** | Date: |
|---|---|

The reasonable accommodations requested above have been:

☐ Approved as requested    ☐ Modified (see comments below)    ☐ Denied (see comments below)

Comments:

| Unit Administrator's signature: | Date: |
|---|---|

**Medical Incident Report**
Connecticut Department of Correction

CN 6602
REV 7/20/15

Facility/Unit: Garner C.I. / Bravo

Report date: 4/30/17   Time: 2:30 ☐ am ☒ pm

Name of patient: Thaize, Micah

Inmate number (if applicable): 411671

Medical staff name: ▮▮▮ Snider , LPN

Incident report submitted: ☐ yes ☐ no   Report number:   Date:

Treatment location: Bravo unit

Injury description: Large amount of swelling left outer eye and left side of face. Small amount of swelling right outer eye and redness across forehead.

Assessment: Inmate was very agitated c̄ an exacerbation of his neurological condition causing him to slap and punch himself in the face.

Treatment administered: On-call psychiatrist contacted, who ordered a one time dose of medication, which inmate agreed to take. Medication had good effect. Inmate is much calmer now and no longer slapping and punching self. Area around left eye cleaned with normal saline and bacitracin applied to small abrasion VS WNL.

Required follow-up: Medical and Mental Health PRN

Observations/remarks: As noted above.

**Chemical agent review prior to planned use of force:**
The offender's health record was reviewed prior to planned use of force. There were no contraindications noted regarding or precluding the use of chemical agents (i.e. history of cardiac or respiratory condition, eye condition under active treatment, or documented prior severe and unexpected reaction to chemical agents).

Known contraindications based on review of health record? ☐ yes ☐ no N/A

**Placement after treatment:**
☐ Inmate is cleared for General Population Placement   ☐ Inmate is cleared for Restrictive Housing Placement
☐ Inmate is not cleared for Restrictive Housing Placement   ☒ Other (specify) Inmate remains in unit B-104

Patient signature: _Micah Thaize_   Date: 4/30/17

Medical staff signature: ▮▮▮ _Snider, LPN_ ▮▮▮   4/30/17

Custody supervisor signature: _[signature]_   Date: 4/30/17

75